## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| In Re:<br><br>John A. Sakon,<br><br>Debtor. | Chapter 11<br><br>Case No. 19-21619 (JJT) |

## TOWN OF GLASTONBURY'S MOTION TO CONVERT THE DEBTOR'S CASE TO A CASE UNDER CHAPTER 7 OR, IN THE ALTERNATIVE, TO DISMISS

The Town of Glastonbury (the "Town"), a creditor and party-in interest in the above-captioned matter, hereby moves (the "Motion") the Court for the entry of an order, the proposed form of which is attached hereto as **Exhibit A**, pursuant to Section 1112(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1017 of the Federal Rules of Bankruptcy Procedure, to convert the case brought by John A. Sakon (the "Debtor") to a case under Chapter 7 or, in the alternative, to dismiss the case.

The Debtor has failed to pay real property taxes to the Town in more than a decade. The Town commenced actions to foreclose its liens in 2012 and 2016; yet, the Debtor engaged in numerous filings that the Superior Court characterized as "nearly frivolous" and which the Connecticut Appellate Court noted were for the purposes of delay. When the Debtor had run out of roadblocks in the foreclosure proceedings, he filed this Chapter 11 case just days before a foreclosure sale was to be held. While the Town waited more than four months for the Debtor to put forward a plan to pay the Town and his other creditors, it has now become apparent that no such plan will be forthcoming and this case is just another in a long line of delay tactics. The time has come for this case to be converted to Chapter 7 and an independent trustee to be put in

charge of the Debtor's non-exempt assets to liquidate them and make distributions to his secured and unsecured creditors.

Cause exists under Section 1112(b) of the Bankruptcy Code to convert or dismiss the Debtor's case for any of the following reasons:  (i) there has been a substantial and continuing loss to and diminution of the estate and there is not a reasonable likelihood of rehabilitation; (ii) it is unreasonable to expect that a plan can be effectuated; (iii) the Debtor has failed to file timely monthly operating reports as required by the Bankruptcy Code and in violation of this Court's order; and (iv) the Debtor has failed to pay real property taxes owed after the order for relief.

In support of this Motion, the Town relies on the Declaration of Eric Goldstein ("Goldstein Decl."), and the Declaration of Denise Talbot ("Talbot Decl."), and further states as follows:

## I.       BACKGROUND

### A.       The Town's Foreclosure Actions

1.       The Debtor is the record owner of the following three parcels of property in the Town:

   a.   2B Griswold Street, Glastonbury, CT 06033 (the "2B Griswold Property");

   b.   8E Main Street, Glastonbury, CT 06033, which is also known and designated as E8A Main Street, Glastonbury, CT 06033 (the "8E Main Property"); and

   c.   131 Griswold Street, Glastonbury, CT 06033 (the "131 Griswold Property" and, collectively with the 2B Griswold Property and the 8E Main Property, the "Properties").

(*See* Amended Schedule A/B, ECF No. 40, pp. 1-2.)

2.       The Debtor has not paid his real estate taxes owed on the Properties to the Town for the 2009–2018 Grand Lists.  (Talbot Decl. ¶ 6.)

8197106

### i.    2B Griswold Street and 8E Main Street Tax Lien Foreclosure

3.      In 2012, the Town commenced a real property tax lien foreclosure action in the

Connecticut Superior Court against the Debtor due to his failure to pay real property taxes for the

2B Griswold Property and the 8E Main Property.   (Goldstein Decl. ¶ 4.) This action is captioned

*Town of Glastonbury v. Sakon, et al.*, Docket No. HHD-CV12-6036889-S (Conn. Super. Ct. filed

2012) (the "2012 Foreclosure Action").   (*Id.*)  In the 2012 Foreclosure Action, the Town is

seeking to foreclose its liens on the 2B Griswold Property and the 8E Main Property for unpaid

real property taxes for the Grand List years of 2009 through the present.  (*Id.*)

4.      Throughout the 2012 Foreclosure Action, the Debtor demonstrated an intent to

delay the proceedings by filing numerous motions for extension of time, motions for a stay, and

motions for a continuance.  (*See generally* Goldstein Decl. Ex. 1, 2012 Foreclosure Action

Docket Sheet.)

5.      On August 8, 2016, after years of frivolous filings by the Debtor, the Superior

Court entered a judgment of foreclosure by sale and set the sale date of October 29, 2016, for

both properties.  (Goldstein Decl. Ex. 2, 2012 Foreclosure Action, Entry Nos. 248.87 and

248.88.)

6.      The Debtor then continued his dilatory tactics by filing a number of appeals.  By

August 2018, the Connecticut Appellate Court either had dismissed the Debtor's appeals or had

affirmed the judgment of the Superior Court.  (*See, e.g.*, Goldstein Decl. Ex. 3–5, 2012

Foreclosure Action, Entry Nos. 329.00, 330.00, and 336.00.)

7.      The Debtor's dilatory tactics resulted in significant costs for the Town.  In an

order granting attorney's fees and costs in connection with the 2012 Foreclosure Action, the

Superior Court held "[t]he attorney fees[, ]though unusually high for an action to foreclose tax

liens, are reasonable given the number of nearly frivolous filings by the [Debtor] which caused

3

this action to remain pending for years." (Goldstein Decl. Ex. 6, 2012 Foreclosure Action, Entry No. 314.00.) In its decision affirming the amount of attorney's fees awarded, the Connecticut Appellate Court agreed with the Town that "the award of attorney's fees was reasonable because the trial court record is replete with motions and pleadings filed by the [Debtor] to delay the instant proceedings." *Town of Glastonbury v. Sakon*, 184 Conn. App. 385, 392 (2018).

8.      On November 6, 2018, as a result of the appeals, the Town moved the Superior Court to open the judgment to update the debt and reset the sale date. (Goldstein Decl. Ex. 7, 2012 Foreclosure Action, Entry No. 337.00.) That motion was granted on January 7, 2019. (Goldstein Decl. Ex. 7, 2012 Foreclosure Action, Entry No. 337.87.) The sale of the two properties was ultimately rescheduled to September 21, 2019. (Goldstein Decl. Ex. 8, 2012 Foreclosure Action, Entry No. 381.00.)

### ii.      131 Griswold Street Tax and Sewer Lien Foreclosure

9.      In 2016, the Town commenced a real property tax lien and sewer lien foreclosure action in the Connecticut Superior Court against the Debtor due to his failure to pay real property taxes and sewer use charges for the 131 Griswold Property. (Goldstein Decl. ¶ 10.) This action is captioned *Town of Glastonbury v. Sakon, et al.*, Docket No. HHD-CV16-6073692-S (Conn. Super. Ct. filed 2016) (the "2016 Foreclosure Action," and together with the 2012 Foreclosure Action, the "Foreclosure Actions"). (*Id.*) In the 2016 Foreclosure Action, the Town is seeking to foreclose its liens on the 131 Griswold Property for unpaid real property taxes for the Grand List years of 2009 to 2014, as well as sewer charges that were due on November 1, 2014 and November 1, 2015. (*See* Goldstein Decl. Ex. 9, 2016 Foreclosure Action, Complaint.)

10.     On November 13, 2017, the Superior Court entered a foreclosure judgment in favor of the Town. (Goldstein Decl. Ex. 10, 2016 Foreclosure Action, Entry No. 127.86.)

4

11.     The Debtor appealed the foreclosure judgment.  By November 2018, the Connecticut Appellate Court had dismissed the Debtor's appeal.  (Goldstein Decl. Ex. 11–12, 2016 Foreclosure Action, Entry Nos. 167.00 and 173.00.)

12.     Due to the dismissal of the appeal, on May 28, 2019, the Superior Court opened the judgment and set the sale date for September 21, 2019.  (Goldstein Decl. Ex. 13, 2016 Foreclosure Action, Entry Nos. 176.00 and 176.88).

13.     The real property taxes for the 131 Griswold Property for the Grand List years 2015 through 2018, and the sewer use charges for 2016 through 2019, became due and payable subsequent to the filing of the 2016 Foreclosure Action.  (Talbot Decl. ¶ 7.)  Those amounts are not part of the judgment debt in the 2016 Foreclosure Action, but also remain outstanding.  (*See id.*)

### iii.     The Debtor's Repeated and Unrealized Claims of Financing in the Foreclosure Actions

14.     During the Foreclosure Actions, the Debtor alleged the ability to refinance the Properties and pay off the outstanding debt owed to the Town.  For example, on October 14, 2016, the Debtor filed a motion to open the judgment in the 2012 Foreclosure Action because he had allegedly obtained a financing offer from Century Capital Partners LLC for $3.4 million.  (Goldstein Decl. Ex. 14–15, 2012 Foreclosure Action, Entry Nos. 296.00, p.2 and 306.00, p.1.)  Indeed, the Debtor described this financing as being "in place."  (Goldstein Decl. Ex. 15, 2012 Foreclosure Action, Entry No. 306.00, p. 6.)  Yet, no financing was forthcoming.  (Goldstein Decl. ¶ 14.)  The Superior Court denied the motion to open the judgment.  (Goldstein Decl. Ex. 14, 2012 Foreclosure Action, Entry No. 296.86.)

15.     More recently, on May 17, 2019, the Debtor filed a motion for a stay of the 2016 Foreclosure Action to allow for refinancing.  (Goldstein Decl. Ex. 16, 2016 Foreclosure Action,

Entry No. 209.00.)  In particular, the Debtor alleged (i) that he had a letter of intent agreement

with the receiver of Cyhani Ventures, Inc. ("Cyhani"), the mortgagee, to transfer title to a

"Special Purpose Entity" and to convert "substantial debt" – presumably the Cyhani mortgage

debt – to equity in this new entity; and (ii) that he had "entered into a Letter of Intent with a

major New York lender to finance the resolution of debts, payoff of creditors, taxes and other

vendors."  (*Id.* pp. 2–3.)  The Debtor's motion further claimed that an appraisal and

environmental reports were to be completed "within the next two weeks" and that the "Lender

[wa]s prepared to close in 30 days." (*Id.* p. 3.)  Despite the Debtor's representations, the

refinancing did not occur.  (Goldstein Decl. ¶ 15.)

16.     On September 17, 2019, the Debtor filed a motion in each of the Foreclosure

Actions seeking a stay of the September 21, 2019 foreclosure sales because of alleged financing

in the amount of $4.8 million that was "expected to close within a few weeks."  (Goldstein Decl.

Ex. 17, 2012 Foreclosure Action, Entry No. 386.00; Goldstein Decl. Ex. 18, 2016 Foreclosure

Action, Entry 231.00.)  The Superior Court denied the Debtor's motion in each action.

(Goldstein Decl. Ex. 17, 2012 Foreclosure Action, Entry No. 386.86; Goldstein Decl. Ex. 18,

2016 Foreclosure Action, Entry No. 231.86.)

**B.     The Debtor's Bankruptcy Filing**

17.     On September 19, 2019 (the "Petition Date"), on the eve of the September 21,

2019 foreclosure sales and after the Superior Court denied his motions to stay in the Foreclosure

Actions, the Debtor filed a voluntary petition in this Court under Chapter 11 of title 11 of the

United States Code (the "Bankruptcy Code").  (*See* ECF No. 1.)

**i.     Assets and Liabilities of the Bankruptcy Estate**

18.     In addition to the Properties, the Debtor's assets include an alleged long-term

ground lease with A & F Main Street Associates, LLC ("A&F") for a parcel located at 2980

8197106

Main Street (rear), Glastonbury, CT 06033 (the "2980 Main Property"), which is adjacent to the

Properties. (Amended Schedule G, ECF No. 40, p. 38.) However, as set forth in the A&F's

motion for relief from stay, A&F issued a notice to quit to the Debtor terminating his lease on or

about December 28, 2018, and thereafter entered into a stipulation in the summary process

action, which was approved by the Connecticut Superior Court, requiring the Debtor to pay to

A&F $97,500 by November 30, 2019, and if he does not, A&F could immediately move for

possession of the 2980 Main Property. (*See generally* ECF No. 59, pp. 2–3 & Ex. H.) In that

motion, A&F is seeking relief from stay to obtain a judgment of possession in the Superior

Court. (*Id.*)

19.     The Debtor asserts that the assemblage of Properties and his interest in the 2980

Main Property has a collective value of $11,430,000. (Amended Schedule A/B, ECF No. 40, p.

3.)

20.     The Debtor has minimal assets, other than the Properties. The Debtor lists an

interest in Sakon LLC worth $7,210.89, based on funds deposited in such limited liability

company's bank account as of the Petition Date. (Amended Schedule A/B, ECF No. 40, p. 6.)

21.     In terms of liquid assets, the Debtor reported $672.86 in the bank as of the

Petition Date and $200.00 of cash. (Amended Schedule A/B, ECF No. 40, p. 6.) The Debtor

has failed to file October and November 2019 operating reports, but reported $362.88 in the bank

and $120.00 of cash as of September 31, 2019. (Operating Report, ECF No. 52, p. 6.)

22.     The Debtor is not employed and his only income comes from Social Security and

other government assistance. (*See* Schedule I, ECF No. 34, p. 33–34.) This income totals

$1,100.00 monthly. (*Id.*)

8197106

23.    The Debtor reported that his estimated monthly expenses total $3,630.00.  (*See* Schedule J, ECF No. 37, p. 33–34.)  Calculated against his nominal monthly income, the Debtor's estimated monthly post-petition losses are $2,530.00 per month.  (*Id.*)

24.    The Properties and the 2980 Main Property make up the assemblage of parcels that the Debtor has indicated that he would like to develop into the "Shoppes at Avalon."  (*See* ECF No. 26, at 7:17–7:33.)  Despite the Debtor having assembled the parcels over the course of the past thirty-six years, no development has occurred and the Debtor will require substantial financing to even begin to develop them.  (*See id.* at 4:33–4:39, 11:14–11:31, 13:18–13:24.)  At the initial case management conference on October 4, 2019, the Debtor conceded that his initial development plan for the "Shoppes at Avalon" is unrealistic, and his current hope is to obtain financing to build a road, subdivide the assemblage into eight separate parcels, and then sell the individual lots "in a condominium format."  (*Id.* at 11:08–11:31, 12:03–12:40.)

25.    On December 4, 2019, the Town filed three separate proofs of claim for each of the Properties in the Debtor's bankruptcy case in the total amount of $908,277.23 due and owing to the Town.  (Claim Nos. 7–9.)  These amounts are secured by the Town's first priority liens on the Properties and will continue to accrue interest at the statutory rate of 1.5% per month.  (*Id.*)

26.    On January 1, 2020, the second installment of the real property taxes for the Properties for the Grand List year 2018 became due and payable in the following amounts: $1,448.95 for the 2B Griswold Property; $3,630.55 for the 8E Main Property; and $13,953.13 for the 131 Griswold Property.  (Talbot Decl. ¶ 8.)  These amounts also remain outstanding and are secured pursuant to Conn. Gen. Stat. § 12-172.  (*See id.*)

27.    In addition to the secured debt owed to the Town, the Debtor owes an undisputed debt of $4,724,416.00 to Cyhani secured by a first mortgage on the Properties and he owes an

8197106

undisputed debt of $325,720.00 to HOC Holdings, LLC secured by a second mortgage on the Properties. (Amended Schedule D, ECF No. 40, p. 21.)  The total debt secured by the Properties is approximately $5,958,413.23.

28.    In addition, the Claims Register indicates that there are $1,011,281.11 in unsecured claims, with the claim of the IRS entitled to priority in the amount of $834,928.95. (Claims Register, Claim No. 1.)

### ii.    The Debtor's Continued Failure to Obtain Financing

29.    The Debtor has also made claims of imminent refinancing in the present bankruptcy action.  At the initial case management conference on October 4, 2019, the Debtor stated that: (i) he has mortgage companies interested in refinancing the Properties; (ii) he has a letter of intent from a lender with a preliminary commitment for $4.8 million; and (iii) he hopes to close the refinancing within sixty days.  (ECF No. 26, at 25:39–25:46; 27:54–28:26; 29:03–29:11.)  To date, no financing has occurred.

30.    Instead, pursuant to this Court's order,[1] on January 17, 2020, the Debtor delivered to the undersigned counsel evidence of any proposed financing agreements, term sheets and/or letters of intent provided by prospective lenders existing as of that date.  (Goldstein Decl. ¶ 21.) Specifically, the Debtor produced two sets of documents:  one relating to K.G.A.K. Financial Group, Inc. ("KGAK") and one relating to MTAG Capital ("MTAG").  (*Id.*)  These documents are attached as Exhibits 19 and 20 to the Goldstein Decl.

31.    The KGAK documents contain the following:

---

[1] The Court's minute order at ECF 79 stated as follows: "The Debtor is further ordered to serve upon Cyhani Ventures, Inc., A&F Main Street Associates, LLC, the Town of Glastonbury, and the United States Trustee any proposed financing agreements, term sheets and/or letters of intent provided by prospective lenders by January 17, 2020."

8197106

a.  A proposed letter of intent dated April 17, 2019 (the "April 2019 LOI"), for a loan in the principal amount of [REDACTED] (Goldstein Decl. Ex. 19, pp. 3–4.) The April 2019 LOI expressly provided [REDACTED] (*Id.*, p. 4.) The April 2019 LOI expressly states that it is not a binding commitment to lend; rather it "is based upon preliminary information and application provided by Applicant(s). Lender has relied upon all the information provided by Applicant(s) as being true and correct in all respects. The Preliminary Terms and Conditions that are stated in this LOI are for discussion purposes only and do not represent a commitment to lend or the underwriting of a note. The proposed rates and terms are preliminary and subject to change per the completion of due diligence, the examination of all requested financial documentation." (*Id.*, p. 3.) [REDACTED] (*See id.*, pp. 10–11.)

b.  An undated letter from Tony Ruggiero, who is identified as the CEO and Co-Founder of KGAK, stating that "we ourselves are committed to proceed with the funding of the Shoppes of Avalon in Glastonbury, Connecticut. *Subject to only me receiving my underwriter's report.* Our target date for closing is September 3rd 2019." (Goldstein Decl. Ex. 19, p. 2 (emphasis added).)

c.  An email from "Tony T," who is identified as a Fund Manager at KGAK, dated November 27, 2019, stating "[o]nce I have a legal entity, a legal project with all permits in good standing, yes I would be willing to fund your project at the following rates: [REDACTED] interest[;] [REDACTED] points[;] Close in [REDACTED] days after receipt of all of the above items mentioned in this email." (Goldstein Decl. Ex. 19, p. 1.)

32.  The MTAG documents contain the following:

a.  A document entitled "Conditional Loan Quote" with a quote date of November 5, 2019, an expiration date of November 6, 2019, and a closing deadline of November 13, 2019. (Goldstein Decl. Ex. 20, p. 1.) The quote appears to be for a two-year term loan in the original principal amount of [REDACTED] at [REDACTED] interest and with a lender fee of [REDACTED], [REDACTED] (*Id.*) The quote appears to be unsigned. (*Id.*, pp. 1–2.)

      b.      The balance of the documents are an email chain between the Debtor and
Zack Ali, who is identified as a "Project Manager" in the Law Office of
Pablo Bustos, Esq.  (*Id.*, pp. 3–6.)

## II.   ARGUMENT

### A.   The Bankruptcy Code Requires the Court to Convert the Debtor's Chapter 11 Case to a Chapter 7 Case or Dismiss the Case Upon a Showing of Cause

33.     Under Section 1112(b) of the Bankruptcy Code, a court shall convert a Chapter 11

case to a Chapter 7 case, or dismiss the case, "for cause" upon the request of a party in interest.

Section 1112(b)(1) states, in pertinent part, that:

> [O]n request of a party in interest, and after notice and a hearing, the court
> shall convert a case under this chapter to a case under chapter 7 or dismiss
> a case under this chapter, whichever is in the best interests of creditors and
> the estate, for cause unless the court determines that the appointment
> under section 1104(a) of a trustee or an examiner is in the best interests of
> creditors and the estate.

11 U.S.C. § 1112(b)(1).  The cause requirement "test[s] whether the benefits of reorganization

are likely to be achieved within a reasonable amount of time and in a manner that is consistent

with the requirements and restrictions of the [Bankruptcy] Code." *Sapphire Dev., LLC v.

McKay*, 549 B.R. 556, 565 (D. Conn. 2016).  Section 1112(b)(4) of the Bankruptcy Code

provides an illustrative but non-exhaustive list of examples as to what constitutes "cause" under

Section 1112(b)(1).  *In re Van Eck*, 425 B.R. 54, 59 (Bankr. D. Conn. 2010).  For instance, cause

exists when there is (i) a "substantial or continuing loss to or diminution of the estate and the

absence of a reasonable likelihood of rehabilitation," (ii) "an inability to effectuate substantial

consummation of a confirmed plan," (iii) an "unexcused failure to satisfy timely any filing or

reporting requirement," or (iv) a "failure timely to pay taxes owed after the date of the order for

relief."  11 U.S.C. § 1112(b)(4)(A), (F), (I), (M).  Here, the Court must convert or dismiss the

Debtor's Chapter 11 case because cause exists under each of these separate and independent

grounds, and conversion or dismissal is in the best interests of the creditors and the Debtor's

estate. *See In re Friedberg*, No. 3:12-CV-00940 JCH, 2013 WL 869937, at *3 (D. Conn. Mar. 5, 2013) ("If a bankruptcy court determines that cause has been shown, then it 'has no choice, and no discretion,' and *must* dismiss or convert the Chapter 11 case."); *see also In re Van Eck*, 425 B.R. 54, 63 (Bankr. D. Conn., Weil, J.) ("Once 'cause' has been demonstrated, the Court must convert or dismiss, unless the Court specifically identifies 'unusual circumstances ... that establish that such relief is not in the best interest of creditors and the estate.'" (citation omitted)).

**B.     Cause Exists under 11 U.S.C. § 1112(b)(4)(A) Because There Is a Continuing Loss to or Diminution of the Debtor's Estate and an Absence of Reasonable Likelihood of Rehabilitation**

34.     Cause exists to convert or dismiss a debtor's Chapter 11 case if there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). "One indication of continuing loss to the bankruptcy estate is negative cash flow after the bankruptcy case is commenced. . . . It is not necessary that the losses to the estate be large. 'All that need be found is that the estate is suffering some diminution in value.'" *In re Taub*, 427 B.R. 208, 231 (Bankr. E.D.N.Y. 2010) (citations omitted), *aff'd*, No. 08 BK 44210 ESS, 2011 WL 1322390 (E.D.N.Y. Mar. 31, 2011); *see In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003) ("Courts have held that a negative cash flow postpetition and an inability to pay current expenses satisfy the elements of § 1112(b)(1)." (citing cases)).

35.     Here, there is overwhelming evidence of diminution of the estate. The Debtor is not employed and his only income is $1,100.00 per month from Social Security and other government assistance. (Schedule I, ECF No. 34, p. 33–34.) At the same time, the Debtor's estimated monthly expenses total $3,630.00. (Schedule J, ECF No. 37, p. 33–34.) As of the Petition Date, the Debtor had approximately $8,083.00 in cash or other liquid asset held directly

12

by the Debtor or his closely held business.  (Amended Schedule A/B, ECF No. 40, p. 6.)  Thus, the amounts available to creditors and to fund this case are continuously decreasing because the Debtor's monthly expenses greatly exceed the nominal income he receives through Social Security and other government assistance.  Specifically, the estimated monthly loss to the Debtor's estate is $2,530.00.  By now, the Debtor should have reduced his remaining liquid assets to nearly nothing.[2]  Moreover, the Town's debt continues to accrue at 1.5% per month and additional taxes will continue to come due for the current and future grand lists, with no end in sight.

36.     In determining whether there is a reasonably likelihood of rehabilitation, courts consider whether a debtor has "'sufficient business prospects,' . . . to 'justify continuance of [a] reorganization effort.'"  *In re Hoover*, 828 F.3d 5, 10 (1st Cir. 2016) (citations omitted). Furthermore, "'[w]ithout a reasonable amount of assets and a feasibly operating business there is no logic in continuing a Chapter 11 [case].' . . .  The debtor's 'boundless confidence' that reorganization will be successful is not a sufficient basis on which to conclude that rehabilitation is possible."  *In re Taub*, 427 B.R. at 231 (internal citation omitted).  Instead, rehabilitation "signifies that the debtor will be reestablished on a secured financial basis, which implies establishing a cash flow from which its current obligations can be met."  *In re AdBrite Corp.*, 290 B.R. at 216.

37.     Nothing in this case demonstrates that the Debtor has sufficient business prospects or assets to justify a reorganization effort.  As noted above, the Debtor is unemployed. (Schedule I, ECF No. 34, p. 33–34.)  Apart from Social Security and government assistance, the

---

[2] This cannot be confirmed because the Debtor has failed to file monthly operating reports for October, November, and December.

8197106

Debtor has no income.  (*Id.*)  The Debtor has scant, if any, liquid assets.  (*See* ECF No. 52, p. 6.)  Moreover, the Properties do not produce any income and will require significant investment to develop.

38.    The Debtor has owned at least one of the Properties since 1984, and has been trying to develop them over the course of the past thirty-six years.  (ECF No. 26, at 4:33–4:39, 11:14–11:31, 13:18–13:24.)  However, to date, the Properties remain largely undeveloped.

39.    While the Debtor could theoretically try to borrow funds to develop the "Shoppes at Avalon" or a condominium subdivision, his track record prior to the Petition Date shows an inability to obtain such financing.  In October 2016, the Debtor claimed that he had $3.4 million in financing for the Properties, which never materialized.  (Goldstein Decl. ¶ 17.)  More recently, in May and September 2019, the Debtor claimed that he had financing in place to pay off his lenders, which was ready to close in just weeks.  (Goldstein Decl. ¶¶ 18–19.)  Yet, this financing also never materialized.

40.    Nor do the KGAK or MTAG documents described above show that the Debtor has made any material improvement in the four months that this case been pending.  For example, the MTAG documents reflect an expired, unsigned "conditional" quote for REDACTED ⬛⬛⬛⬛⬛ that is now more than two months old and which assumes REDACTED ⬛⬛⬛⬛⬛, notwithstanding the existing liens on the Properties of nearly $6 million and the fact that the lease for the 2980 Main Property has been terminated.  (*See* Goldstein Decl. ¶ 23 & Ex. 20.)

41.    Even viewed in the most favorable light, the KGAK documents appear to reflect a willingness, as of November 2019, to possibly loan up to ⬛⬛REDACTED⬛⬛ ⬛⬛⬛⬛⬛ (*See* Goldstein

8197106

Decl. ¶ 22 & Ex. 19.)  In any event, the loan is subject to the Debtor's formation of "a legal

entity" and having "a legal project with all permits in good standing."  (*Id.*)  Neither of these

prerequisites have occurred.  The Debtor has not transferred his interests in the Properties to a

"legal entity" and the permits for the "Shoppes at Avalon" are not in good standing.[3]  Moreover,

as was the case with MTAG, the KGAK documents ▮▮▮▮▮▮REDACTED▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮, notwithstanding the existing liens on the Properties of nearly $6

million and the fact that the lease for the 2980 Main Property has been terminated.  (*See id.*)  It is

also notable that the MTAG and KGAK documents reference the "Shoppes at Avalon"

development project.  The Debtor has conceded that his previous plans for the "Shoppes at

Avalon" project are unrealistic, and that his current intention is to develop a condominium

subdivision.  (ECF No. 26, at 11:08–11:31, 12:03–12:40.)  It does not appear that the MTAG and

KGAK documents reflect that understanding.

42.     There is no reasonable likelihood of rehabilitation when a debtor lacks any

income or operating funds.  *In re Johnston*, 149 B.R. 158, 162 (B.A.P. 9th Cir. 1992).  Here, the

Debtor has no income or funds to pay his personal expenses, let alone to develop the "Shoppes at

Avalon," and no reasonable prospect of obtaining financing to do so.  Thus, there is no

reasonable likelihood of the Debtor's rehabilitation.

### C.     Cause Exists under 11 U.S.C. § 1112(b)(4)(M) Because it is Unreasonable to Expect that a Plan Can be Effectuated

43.     Cause also exists to convert or dismiss a debtor's Chapter 11 case when there is

an "inability to effectuate substantial consummation of a confirmed plan."  11 U.S.C. §

---

[3] The Debtor's wetlands permit for the Properties, by its terms, expired on August 10, 2016.  (*See* Goldstein Decl. Ex. 21.)  Additionally, the special permit for the Properties was never effective because, among other reasons, the Debtor failed to record it on the land records and to perform other conditions of approval specified in the approval letter.  (*Id.* ¶¶  19-20 & Ex. 22.)  Furthermore, even if the special permit were effective, the one-year term of the special permit passed on April 4, 2019.  (*Id.* Ex. 22.)

8197106

1112(b)(4)(M).  "A debtor is unable to effectuate a plan where it 'lacks the ability to formulate a

plan or to carry one out.'"  *In re Babayoff*, 445 B.R. 64, 76 (Bankr. E.D.N.Y. 2011) (citations

omitted).

44.    For the Debtor to confirm a plan, he must, among other things, provide that

holders of secured claims – here, the Town and the mortgagees – will receive cash equal to the

present value of the allowed amount of such claims (unless they were to voluntarily agree to

different treatment).  *Id.* § 1129(b)(2)(A).  The Debtor has not yet proposed a plan and there is no

indication that he can propose a plan that can be confirmed.  As discussed in Part II.B above, the

Debtor is unemployed and he operates at a net loss of more than $2,500.00 per month.  The

Properties do not produce income and they will require a significant investment before they can

generate income.  The Debtor's assertion that he will obtain "financing" to fund a plan is simply

not credible.  The Debtor has owned at least one of the Properties for thirty-six years, yet nothing

has happened.  Since 2016, the Debtor has claimed that financing was just weeks away; yet,

nothing happened.  As noted above in Part II.B, the Debtor's ability to close a financing with

either KGAK or MTAG is highly questionable.  Moreover, even if the Debtor were to secure

permits for the Shoppes at Avalon project, form a "legal entity" for the project, and reinstate the

ground lease for the 2980 Main Property, ███████████████REDACTED███████████████

████████████████████████████████████████████████████

██████████.  In light of the foregoing, the Debtor will not reasonable be able to propose and

effectuate a confirmable plan.

**D.    Cause Exists under 11 U.S.C. §§ 1112(b)(4)(E) and 1112(b)(4)(F) Because the Debtor Has Failed to File Timely Monthly Operating Reports**

45.    Cause also exists to convert or dismiss a debtor's Chapter 11 case when there is

an "unexcused failure to satisfy timely any filing or reporting requirement" established by the

Bankruptcy Code or any rule applicable to a case under Chapter 11 of the Bankruptcy Code.  11

U.S.C. § 1112(b)(4)(F).  In addition, there is cause under § 1112 if the Debtor fails to comply

with an order of the Court.  11 U.S.C. § 1112(b)(4)(E).

46.    Pursuant to the Bankruptcy Code, the Debtor must file a monthly operating report

each month.  11 U.S.C. §§ 704(a)(8), 1106(a)(1), 1107.  Failure to do so, "whether based on

inability to do so or otherwise," constitutes cause to convert the case to a case under Chapter 7.

*In re Roma Grp., Inc.*, 165 B.R. 779, 780 (S.D.N.Y. 1994); *see In re Butt*, 598 B.R. 724, 729

(Bankr. W.D.N.Y. 2019).  For a monthly operating report to be filed timely, it must be filed no

later than the twenty-first day of the month following the month to which the report pertains.[4]

47.    Here, the Debtor filed his monthly operating report for the month of September

over thirty days late, *see* ECF No. 52, and has failed to file monthly operating reports for the

months of October, November, and December.

48.    Moreover, in this Court's January 15, 2020 minute order, it ordered that the

Debtor "file with the Court any outstanding Monthly Operating Reports (MOR), thereby

becoming current, by 5:00 PM, January 27, 2020."  (ECF No. 79.)  Yet, he has failed to do so.

49.    The Debtor cannot seek shelter in the protections of the automatic stay without

performing any of the duties imposed on a debtor-in-possession.  The Debtor's breach of his

obligations is analogous to *In re Rondaxe Properties, LLC*, where the United States Bankruptcy

Court for the Western District of New York reasoned:

> For 111 days, the Debtor has enjoyed the protections of the automatic stay
> under 11 U.S.C. § 362—once again thwarting the County's efforts to
> foreclose its tax lien—without performing any of the duties imposed on a
> debtor-in-possession by the Bankruptcy Code and Rules. The Court finds

---

[4] U.S. Dep't of Justice, Operating Guidelines and Reporting Requirements for Debtors in Possession
and Chapter 11 Trustees, pp. 3–4. (2013), https://www.justice.gov/sites/default/files/ust-
regions/legacy/2013/01/10/ch11_guidelines_reporting_req.pdf.

8197106

> that the UST has demonstrated, by a preponderance of evidence, that
> cause exists to convert or dismiss the case . . . .

*In re Rondaxe Properties, LLC*, No. 15-20222, 2015 WL 6956521, at *2 (Bankr. W.D.N.Y. June 30, 2015).  The Debtor's unexcused failure to file timely monthly operating reports for October, November, and December, and his violation of this Court's January 15, 2020 minute order constitute cause under §§ 1112(b)(4)(E) and 1112(b)(4)(F) to convert the Debtor's case.

### E.    Cause Exists under 11 U.S.C. § 1112(b)(4)(I) Because the Debtor Has Failed to Pay Real Property Taxes Owed After the Order for Relief.

50.    Cause also exists to convert or dismiss a debtor's Chapter 11 case when there is a "failure timely to pay taxes owed after the date of the order for relief."  11 U.S.C. § 1112(b)(4)(I); *see In re Park*, 436 B.R. 811, 819 (Bankr. W.D. Va. 2010) (finding conversion or dismissal to be appropriate when a debtor failed to pay real property taxes that became post-petition); *In re Costa Bonita Beach Resort, Inc.*, 513 B.R. 184, 196–97, 200 (Bankr. D.P.R. 2014) (same).  On January 1, 2020, the second installment of the real property taxes for the Properties for the Grand List year 2018 became due and payable in the following amounts: $1,448.95 for the 2B Griswold Property; $3,630.55 for the 8E Main Property; and $13,953.13 for the 131 Griswold Property.  (Talbot Decl. ¶ 8.)  The Debtor has not yet paid these amounts and, as of February 1, 2020, they are past due.  (*Id.*)  This failure to pay post-petition real property taxes is independent cause to convert the Debtor's Chapter 11 case to a case under Chapter 7.  *See In re Ashley Oaks Dev. Corp.*, 458 B.R. 280, 285 (Bankr. D.S.C. 2011) (finding that a debtor's failure to pay post-petition real property taxes on "at least one (1) parcel subject to [a creditor's] mortgages" to be cause for conversion or dismissal).

### F.    Conversion is in the Best Interests of the Creditors and the Debtor's Estate

51.    Once a bankruptcy court finds cause under Section 1112(b), it must determine whether conversion or dismissal is in "the best interests of creditors and the estate."  11 U.S.C. §

1112(b)(1); *see SWJ Mgmt., LLC v. Coan*, 551 B.R. 93, 98 (D. Conn. 2015).  "Cause to convert a

Chapter 11 bankruptcy case to Chapter 7 exists where reorganization seems unlikely or

unrealistic based on the Debtor's track record as debtor-in-possession and where the risk of delay

falls entirely on the creditors."  *In re Milford Connecticut Assocs., L.P.*, 404 B.R. 699, 708 (D.

Conn. 2009); *see SWJ Mgmt., LLC v. Coan*, 551 B.R. 93, 98 (D. Conn. 2015) (noting that

"prejudice to creditors" is a proper reason for a bankruptcy court to order conversion as opposed

to dismissal); *In re Babayoff*, 445 B.R. at 82 ("[I]f '[t]he creditors ... are better served by the

centralized collection and disbursement provided by the bankruptcy process,' then conversion,

rather than dismissal, is in the best interests of creditors and serves as the preferred remedy.").

52.     Here, conversion is in the best interests of creditors and the estate.  Since

reorganization is not viable, liquidation is the most cost effective and efficient way to liquidate

the Debtor's non-exempt assets for distribution to his secured and unsecured creditors.  In the

Foreclosure Actions, the Debtor made numerous "nearly frivolous filings [that] caused this

action to remain pending for years," and, thus, frustrated his creditors ability to liquidate the

Properties and recover on their claims.  (Goldstein Decl. Ex. 6.)  *See Town of Glastonbury v.

Sakon*, 184 Conn App. at 392 (same).  When the Superior Court would no longer stand for his

tactics, the Debtor filed this case as a last ditch attempt to avoid the September 21, 2019

foreclosure sales.  Thus, creditors would be best served to have an independent trustee appointed

to be charged with taking possession of and liquidating the Debtor's non-exempt assets, and,

thereafter making distributions to the Debtor's significant secured and unsecured creditors.

53.     On the other hand, dismissal will lead to additional delay and cost to creditors

realizing on their claims.  Based on his past conduct, the Debtor likely will continue to attempt to

frustrate his secured creditors from foreclosing on the Properties in the Foreclosure Actions.

8197106

And the Debtor's unsecured creditors will have to resort to separate judicial proceedings to realize on their claims. Thus, dismissal would only serve to delay creditor recoveries, reduce the amounts of such recoveries due to the continuing diminution of the Debtor's assets during this period, and increase creditors' legal costs in exercising their remedies against the Debtor. *See In re Lawson Trucking Co., Inc.*, 56 B.R. 194, 195 (Bankr. D.R.I. 1986) (granting motion to convert based, in part, on "intentional delaying actions of the debtor" that "resulted in a continuing loss or diminution of the estate and the unlikelihood of rehabilitation"). Additionally, because "the [D]ebtor's track record has been something less than acceptable with respect to the timely submission of monthly operating reports . . . the interests of the creditors may be jeopardized by allowing the [D]ebtor to proceed with a liquidation without the benefit of an independent trustee's supervision." *Matter of Natrl Plants & Lands Mgmt. Co.*, Ltd., 68 B.R. 394, 396 (Bankr. S.D.N.Y. 1986).

### G. In the Alternative, if the Court Does Not Find that Conversion Is in the Best Interests of Creditors and the Estate, the Case Should Be Dismissed

54. Once cause is established, the court must dismiss or convert a case unless: (1) the court "finds and specifically identifies unusual circumstances" where conversion or dismissal is not in the best interests of creditors and the estate; (2) there is a reasonable likelihood that a plan will be timely confirmed; and (3) the established cause is grounded on an act or omission of the Debtor that was reasonably justified and can be timely cured. 11 U.S.C. § 1112(b)(1)–(2); *In re Van Eck*, 425 B.R. 54, 63 (Bankr. D. Conn. 2010, Weil, J.).

55. Here, as discussed in Part II.E above, conversion is in the best interests of creditors. As discussed in Part II.C, it is not reasonably likely that plan will be timely confirmed. Finally, the cause for conversion or dismissal cannot be reasonably justified by the Debtor; nor does the Debtor's track record indicate that such cause can be timely cured. Therefore, if the

Court does not convert the Chapter 11 case to a case under Chapter 7, then the case must be dismissed. *See* 11 U.S.C. § 1112(b)(1); *In re Friedberg*, No. 3:12-CV-00940 JCH, 2013 WL 869937, at *3 (D. Conn. Mar. 5, 2013) (noting that "a bankruptcy court . . . *must* dismiss or convert the Chapter 11 case" when cause exists).

## III.    CONCLUSION

WHEREFORE, the Town respectfully requests that this Court enter an order (i) converting this case to one under Chapter 7 pursuant to 11 U.S.C. § 1112(b)(1) or, in the alternative, dismissing this case pursuant to 11 U.S.C. § 1112(b)(1); and (ii) granting such other and further relief as is just and necessary.

Dated:  March 31, 2020                    Respectfully submitted,

TOWN OF GLASTONBURY

By: /s/ Eric Goldstein
       Eric Goldstein (ct27195)
       Jaime A. Welsh (ct30078)
       For SHIPMAN & GOODWIN LLP
       One Constitution Plaza
       Hartford, CT 06103-1919
       Tel. (860) 251-5000
       Fax (860) 251-5218
       egoldstein@goodwin.com
       jwelsh@goodwin.com

       Its Attorneys

8197106

# EXHIBIT A

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| In Re: <br><br> John A. Sakon, <br><br> Debtor. | Chapter 11 <br><br> Case No. 19-21619 (JJT) |

## PROPOSED ORDER GRANTING TOWN OF GLASTONBURY'S MOTION TO CONVERT THE DEBTOR'S CASE TO A CASE UNDER CHAPTER 7

Upon the Motion of the Town of Glastonbury (the "Town"), a creditor and party-in

interest in the above-captioned matter, for an Order converting this case to a Chapter 7 case filed

on February 6, 2020, it appearing that the relief set forth in the Motion ought to be granted,

**IT IS ORDERED THAT:**

1.      This Chapter 11 case is converted to a case under Chapter 7 of the Bankruptcy Code.

2.      The Debtor shall:

    a.   forthwith turn over to the Chapter 7 trustee all records and property of the estate in the possession and/or control of the Debtor, as required by Federal Rule of Bankruptcy Procedure 1019(4);

    b.   within fourteen (14) days after entry of this Order, file the lists, inventories, statements, and schedules required under Federal Rules of Bankruptcy Procedure 1019(1)(A) and 1007(b), if not previously filed; and

    c.   within thirty (30) days of the date of this order, file and serve on the United States Trustee a final report and account required under Federal Rules of Bankruptcy Procedure 1019(5)(A).

Dated at Hartford, Connecticut, this _____ day of March, 2020.

 

                                      _____
                                      James J. Tancredi
                                      United States Bankruptcy Judge

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by electronic mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.  The foregoing was also served on March 31, 2020, by first class mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing, and to the Debtor by email and first class mail as indicated below.

John Alan Sakon
82 Folly Brook Lane
Manchester, CT 06040
Email: johnsakon@yahoo.com


/s/ Eric Goldstein
Eric Goldstein