## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## HARTFORD DIVISION

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE No. | 19-21619 (JJT) |
| | ) | | |
| JOHN ALAN SAKON, | ) | CHAPTER | 7 |
| Debtor. | ) | | |
| | ) | RE: ECF Nos. | 97, 118, 186, 198, 201, 202, 203 |

## MEMORANDUM OF DECISION
## GRANTING THE TOWN OF GLASTONBURY'S
## MOTION TO CONVERT THE DEBTOR'S CASE TO A CASE UNDER
## CHAPTER 7, OR IN THE ALTERNATIVE, TO DISMISS, AND DENYING
## THE DEBTOR'S MOTION TO EXTEND TIME TO FILE RESPONSIVE PLEADING,
## REQUEST FOR EVIDENTIARY HEARING, AND APPLICATION FOR SUBPOENAS

I.    INTRODUCTION

Before the Court are four interrelated motions concerning the conversion or dismissal of the

Chapter 11 case of John Alan Sakon (the "Debtor")[1]: (1) The Motion to Convert the Debtor's

Case to a Case under Chapter 7, or in the Alternative, to Dismiss (ECF No. 186, "Motion to

Convert") filed by the Town of Glastonbury (the "Town"); (2) The Debtor's Motion to Extend

Time to File Responsive Pleading to May 8, 2020 (ECF No. 198, "Motion to Extend"); (3) the

Debtor's Request for Evidentiary Hearing (ECF No. 201); and (4) the Debtor's Application for

Subpoenas (ECF No. 202).

Pursuant to 11 U.S.C. § 1112(b) and Rule 1017 of the Federal Rules of Bankruptcy

Procedure, the Town moves for the entry of an order converting the Debtor's Chapter 11 case for

---

[1] As previously noted in other rulings issued by this Court, the Debtor is an experienced and sophisticated commercial real estate appraiser and developer. The Debtor, however, is not formally represented by counsel in the instant proceedings but has conferred with legal counsel at various junctures when he deemed additional assistance appropriate.

cause to a case under Chapter 7 of the Bankruptcy Code, or in the alternative, to dismiss the above-captioned Chapter 11 case. *See* ECF No. 186. The Town's main argument is that cause exists to convert this case because of the substantial and continuing diminution of the bankruptcy estate and the absence of a reasonable likelihood of rehabilitation, which is predicated upon matters of record, the Debtor's own admissions and filings, and matters of judicial notice.

On February 6, 2020, the Town filed a redacted version of its Motion to Convert (ECF No. 97) in conjunction with its Motion to Seal (ECF No. 101), wherein the Town, out of an abundance of caution, and in compliance with the Court's entry of a Protective Order (ECF No. 58), redacted certain information relating to potential financing agreements that the Debtor had disclosed as confidential. Thereafter, the Debtor filed his first request for an extension based on the Debtor's ongoing medical issues and related treatment, *see* Motion for Extension of Time to File Responsive Pleading to April 3, 2020 (ECF No. 118), wherein he requested additional time to respond to the Town's Motion to Convert. The Court granted the Debtor's Motion (*see* ECF No. 128) and extended the response date to April 3, 2020.

On March 6, 2020, the Court held a hearing on the Town's Motion to Seal (ECF No. 139), and on March 25, 2020, issued an Order (ECF No. 174) denying the Motion to Seal in part, and directing the Town to file an updated and redacted version of the Motion to Convert "with direct redactions of any proposed loan rates and/or terms" so as to allow for competitive negotiations between the Debtor and potential lenders. The instant Motion to Convert, refiled on March 31, 2020 and docketed as ECF No. 186, reflects the Town's compliance with that Order. A hearing on the refiled motion was subsequently scheduled for April 9, 2020 (ECF No. 195).

On April 3, 2020, the date by which the Debtor was to respond to the Motion to Convert, the Debtor filed his second Motion to Extend Time to File Responsive Pleading (ECF No. 198), this

time requesting an additional five-week extension to May 8, 2020, asserting that his continuing health issues, Covid-19, and the lack of "urgency to press the case at this time" (based on the Town's alleged inability to obtain the relief it sought) justified his request. In its Limited Objection (ECF No. 203), the Town argued that an extension to April 24, and not May 8, should be sufficient given that at the time of the Debtor's second request to extend time the Motion to Convert already had been pending for eight weeks. These arguments were ultimately taken up at the hearing on the Motion to Convert on April 9, 2020, at which time the Debtor stated that, save for citing legal authorities, he had otherwise fully argued in support of his second Motion to Extend Time and responded to the Town's Objection thereto.

At the same April 9 hearing, the Court also heard argument on the Debtor's Request for Evidentiary Hearing (ECF No. 201), his Application for Subpoenas (ECF No. 202), and the Town's Objection thereto (ECF No. 216). Through the Debtor's interrelated filings and the corresponding arguments advanced during oral argument before this Court, the Debtor contends that in response to the Town's Motion to Convert there is a need to have an evidentiary hearing in order to establish: the value of the estate, the extent of his efforts to obtain financing, whether the filing of his monthly operating reports was in fact untimely, whether the taxes due and owing are valid, and whether the Town allegedly interfered with his plan of reorganization. In response, the Town objected, arguing that these issues are either irrelevant or immaterial to the Motion to Convert, or that they are matters of record or are facts that the Court has taken judicial notice of, and thus do not warrant a further evidentiary hearing.

At the April 9th hearing, the United States Trustee ("UST") noted that there are several grounds warranting conversion or dismissal of the Debtor's case, including the diminution of the estate due to the Debtor's demonstrated inability to pay the continuing build-up of administrative

expenses and the unlikely prospect of reorganization in light of various circumstances, including the course of the case heretofore, the Debtor's inability to secure credible, enforceable financing, and his lack of any demonstrable capital to fund his Chapter 11 plan. At the conclusion of the April 9 hearing, the Court took the matters under advisement. For the reasons set forth below, the Town's Motion to Convert is hereby GRANTED, the Debtor's Motion to Extend Time is hereby DENIED, the Debtor's Request for Evidentiary Hearing is hereby DENIED, and the Debtor's Application for Subpoenas is hereby DENIED.

II.   KEY RULINGS OF THIS COURT PRECEDING THIS MOTION[2]

A.   Order Denying Debtor's Motion for Extension of Time to Assume or Reject Lease, ECF No. 129

The Debtor filed a Motion for Extension of Time to Accept or Reject Lease (ECF No. 85), wherein he sought, pursuant to 11 U.S.C. § 365(d)(4)(B)(i), to extend the time to assume or reject a ground lease (the "Lease") of certain commercial property owned by A&F Main Street Associates, LLC ("A&F"). At the hearing on this motion, the Court was presented with sufficient legal authority and uncontested facts to determine that the threshold question was whether there was, in fact, a lease to assume or reject. The relevant findings by this Court included:

1.   The Debtor defaulted under the Lease by failing to timely pay rent;

2.   Pursuant to the terms of the Lease, A&F sent the Debtor a notice of default, a notice of termination of the Lease, and a notice to quit;

3.   The Debtor neither vacated nor surrendered the subject property upon receipt of either the notice of termination or the notice to quit;

---

[2] In addition to the orders and rulings set forth herein, the Court has granted numerous requests from the Debtor to either continue or stay proceedings, or to extend the time to file responsive pleadings. *See* ECF Nos. 29, 64, 79, 111, 128, 156, and 226.

4. A&F commenced a summary process action in the Connecticut Superior Court to evict the Debtor and obtain a judgment of possession;

5. In lieu of a trial in the summary process action, the Debtor and A&F entered into a stipulation (the "Stipulation") approved by the court, whereby the Debtor agreed to pay A&F $97,500.00 by a date certain so as to cause A&F to reinstate the Lease;

6. The Debtor did not timely (and has yet to) make this payment; and

7. The Debtor subsequently commenced the instant bankruptcy case and has since made no further payments under the Lease or the Stipulation.

Upon these facts, the Court concluded that the Lease, and the Debtor's rights thereunder, terminated pursuant to Connecticut law upon the service of the notice to quit and was not subsequently revived by the existence of the Stipulation. Because the Court found that the Lease terminated prepetition and could thus not be assumed under 11 U.S.C. § 365(c)(3), and because the Court lacked the power to revive a terminated lease, the Debtor's Motion was denied.

Thereafter, the Debtor filed a Motion to Reconsider (ECF No. 155) requesting that the Court reconsider its prior ruling denying the Debtor's Motion for Extension of Time to Assume or Reject Lease (ECF No. 129),[3] arguing that the Order contains errors of law pertaining to the threshold issue of whether the Debtor's ground lease terminated prepetition.[4] The Debtor also filed a Notice of Appeal to the District Court, ECF No. 162, related to the Court's ruling denying his Motion for Extension of Time.[5]

---

[3] The Court notes that in the Debtor's Motion for Relief as to Scheduling Matters and Time to File Responsive Pleadings (ECF No. 145), the Debtor also requested reconsideration of ECF No. 129. In this Court's Ruling on that motion (ECF No. 158), the Court addressed the Debtor's request for reconsideration and found it to be without merit.

[4] A Ruling on the Motion to Reconsider is forthcoming.

[5] *See In re Sakon*, Docket No. 3:20-cv-00353-JAM (D. Conn.).

B.  Order Granting Amended Motion for Relief from Stay for A&F Main Street
    Associates, LLC, ECF No. 150

A&F filed an Amended Motion for Relief from Stay (ECF No. 59), seeking relief as to

certain commercial property leased to the Debtor, so that A&F may pursue its eviction

proceedings against the Debtor in state court to secure a judgment of possession. Relying upon

the same facts delineated in its Order Denying Debtor's Motion for Extension of Time to

Assume or Reject Lease, ECF No. 129, and the uncontested facts presented at the hearing on

A&F's Motion for Relief from Stay, the Court determined that because the Lease terminated

prepetition, it was not subject to the automatic stay pursuant to the express provisions of 11

U.S.C. § 362(b)(10). The Court also found that even in the absence of section 362(b)(10), cause

existed to lift the automatic stay on the basis of the Debtor's patent inability to assume a

terminated lease under 11 U.S.C. § 365(c)(3).[6] Accordingly, the Court granted A&F's Amended

Motion for Relief from Stay (ECF No. 150). The Court's ruling on this motion was again the

subject of a Motion to Reconsider filed by the Debtor (ECF No. 177), wherein the Debtor argued

that the Order contains errors of law.[7]

C.  Order Denying Debtor's Motion to Assume Lease of A&F Main Street
    Associates, LLC, ECF No. 151

After the hearing on the Debtor's Motion for Extension of Time to Accept or Reject Lease,

but before the Court issued its ruling denying such motion, the Debtor filed a Motion to Assume

Lease of A&F (ECF No. 116), seeking to assume the Lease this Court ultimately found to have

terminated prepetition. Consistent with its Order Denying the Debtor's Motion for Extension of

---

[6] Title 11 U.S.C. § 365(c)(3) provides: "[t]he trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if . . . such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order of relief."
[7] A Ruling on the Motion to Reconsider is forthcoming.

Time to Accept or Reject Lease, the Court found that the Debtor's Lease terminated prepetition pursuant to Connecticut law and, because the Lease cannot be assumed under 11 U.S.C. § 365(c)(3), the Debtor's Motion to Assume was denied (ECF No. 151). The Court also noted that even if an unexpired lease still somehow existed for the Debtor to assume, the Debtor–bereft of the financial resources to do so–has not met, and cannot meet, his burden under section 365(b)(1) of providing cure, paying damages, or providing adequate assurance of future performance.

This Order was yet another adverse ruling the Debtor took issue with, and which was also included in the Debtor's Motion to Reconsider filed at ECF No. 177. While each of the Debtor's Motions to Reconsider (ECF Nos. 155 and 177, respectively) is rife with immaterial and irrelevant accusations and allegations of why he has heretofore failed to secure financing, the Debtor's contentions critically lack any controlling law or new material facts that would necessitate reversal of this Court's prior Rulings.

### III.    BACKGROUND OF THIS MOTION

The underlying dispute between the Debtor and the Town dates back nearly a decade and concerns three properties (the "Properties") that the Debtor owns in the Town of Glastonbury, which are located at 131 Griswold Street ("131 Griswold"), 2B Griswold Street ("2B Griswold"), and 8E Main Street ("Main Street"). In 2012, the Town commenced a real property tax lien foreclosure action (the "2012 Foreclosure") against the Debtor based on his failure to pay real property taxes on 2B Griswold and Main Street for the Grand List years of 2009 through the present.[8] Thereafter, in 2016, the Town commenced a second real property tax lien and sewer lien foreclosure action (the "2016 Foreclosure") against the Debtor based on his failure to pay

---

[8] *See Town of Glastonbury v. Sakon, et al.*, Docket No. HHD-CV12-6036889-S (Conn. Super. Ct.).

real property taxes on 131 Griswold for the Grand List years of 2009-2014, and for sewer charges due and owning on November 1, 2014 and November 1, 2015.[9]

After multi-year litigation in each of the respective foreclosure actions—a function of, in large part, the Debtor's *modus operandi* of filing motions to continue, motions to extend time, motions for stay of proceedings, and motions to reconsider and appeals after adverse rulings—the Superior Court entered judgements of foreclosure by sale and ultimately set the sale date of all Properties to September 21, 2019. *See* 2012 Foreclosure, Entry Nos. 248.87, 381.00; *see also* 2016 Foreclosure, Entry Nos. 127.86, 176.88.[10]

On September 19, 2019 (the "Petition Date"), two days before the foreclosure sales were scheduled to take place, the Debtor filed in this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (ECF No. 1). The Debtor's initial purpose and plan for this Chapter 11 has changed over the course of this case, and has ranged from developing the Properties into a shopping center, to building a road and subdividing the Properties in order to sell individual lots in a condominium format, to simply refinancing the entire debt on the Properties and moving to dismiss this bankruptcy case.[11] One fact, however, that has remained constant throughout this case, is the Debtor's lack of credible financial support for any one of these potential paths to reorganization. As the Debtor himself stated, "the financing is the key." (T/r 10/4 55:32-55:34, Initial Case Management hearing).

Critically, the Debtor's Schedules disclose that his primary assets are his fee simple ownership of the Properties and the aforementioned Lease pertaining to property owned by A&F

---

[9] *See Town of Glastonbury v. Sakon, et al.*, Docket No. HHD-CV16-6073692-S (Conn. Super. Ct.).

[10] A review of the docket in each of the foreclosure actions reveals, as in this bankruptcy action, the Debtor's repeated and unrealized claims of financing.

[11] None of these plans has resulted in the filing, let alone funding, of a Chapter 11 plan, or even the funding of case administration.

8

Main Street Associates, LLC, which the Debtor asserts have a collective value of $11,430,000. *See* Amended Schedules, ECF No. 40. However, in its Ruling Denying Debtor's Motion for Extension of Time to Accept or Reject Lease, *see* Section II.A, *supra*, a critical asset of the Debtor's estate was eliminated when the Court determined that the Lease terminated prepetition. What's more, stay relief has also entered in favor of A&F so that it may pursue its state court remedies and move to regain possession of the leased property. ECF No. 150.

Aside from these Properties, the Debtor's assets are otherwise minimal. His Schedules list an interest in Sakon LLC worth $7,210.89, with $672.86 in the bank, and $200.00 in cash on hand as of the Petition Date. *See* ECF No. 40. The Debtor is not employed and his sole source of income is the approximate $1,000.00 that he receives monthly through Social Security and other government assistance. *See* ECF No. 34, Schedule I; *see also* Monthly Operating Report for March 2020, ECF No. 230. Critically, the Debtor reported monthly expenses of $3,530.00, resulting in an estimated monthly post-petition loss to the estate of $2,530.00. Schedule J, ECF No. 37.[12] The Debtor's financial profile is an indisputable mismatch to his stated real estate ambitions.

The Debtor's monthly operating reports ("MOR") further evidence the diminished state of the Debtor's financial affairs.[13] The most recently filed MOR for the month of March lists a bank account balance of $49.46[14] and $120.00 in cash. ECF No. 230. Notably, the balance sheet lists

---

[12] The Court first expressed significant concern as to the estate's lack of cash at the initial Case Management hearing on October 4, 2019 (ECF No. 27). The Debtor has since had eight months to address the Court's concerns and put forth evidence of any ascertainable or reliable source of funding, yet he has failed to do so. In addition, the Debtor has been unable to show any reliable source of income from which he can meet current obligations on the Properties, or his own personal living expenses for that matter.

[13] The Debtor filed his MORs substantially late—the September MOR was filed on November 25, 2019 (ECF No. 52). It was another four months before the Debtor filed the MORs for the months of October 2019–February 2020 on March 30, 2020 (ECF Nos. 184-85, 187-89).

[14] It should be noted that an additional transfer of $300.00 from Sakon LLC was made into the Debtor's personal account this month, ostensibly as an attempt to maintain a positive balance at the end of the month.

the value of the Debtor's total personal assets as $10,042.00, which constitutes a diminution of $8,741.75 since the Petition Date. *Id.* These filings also indicate that no taxes or mortgage payments have been paid, and that payments of utilities have been minimal and sporadic, with only two rental payments having been made during the eight months that this case has been pending.

In the present case, the Debtor's liabilities include a first and second mortgage secured by the Properties in the amount of $5,050,136.00, in addition to the Town's pre-petition tax claims of $908,277.23 secured by liens on the Properties.[15] *See* ECF No. 40; Claim Nos. 7–9. The total amount of debt secured by the Properties is approximately $5,958,413.23, with unsecured claims totaling $1,011,281.11.

## IV.    DISCUSSION

In its Motion to Convert, the Town argues that cause exists to convert or dismiss the Debtor's case because: (1) there has been a substantial and continuing loss to and diminution of the estate and there is not a reasonable likelihood of rehabilitation; (2) it is unreasonable to expect that a plan can be effectuated; (3) the Debtor has failed to file timely monthly operating reports as required by the Bankruptcy Code and in violation of this Court's order; and (4) the Debtor has failed to pay real property taxes owed after the order for relief.

Section 1112(b) of the Bankruptcy Code provides that on request of a party in interest, and after notice and a hearing, the court shall, for cause shown, convert a chapter 11 case to a chapter 7 case, or dismiss a chapter 11 case, whichever is in the best interests of creditors and the estate.

---

[15] Although the amount of the Town's claims is allegedly disputed by the Debtor, the Superior Court made various findings as to the amount of tax debt for each of the Properties and awarded the Town its attorney's fees, appraisal fees, and title search fees related to each of the respective foreclosure actions. In addition to the predetermined debt and fees, the Town's claims also ostensibly include the second installment of real property taxes for the Properties that became due and owing on January 1, 2020, in addition to the interest accruing on the Town's liens at the statutory rate of 1.5% per month. *See* Motion to Convert, ECF No. 186.

*See* 11 U.S.C. § 1112(b)(1). The moving party bears the burden of establishing cause under section 1112(b)(1); and once cause has been demonstrated, the court has broad discretion in determining whether to convert or dismiss the case. *In re AdBrite Corp.*, 290 B.R. 209, 214-15 (Bankr. S.D.N.Y. 2003).

Section 1112(b)(4) provides an illustrative and non-exhaustive list of what constitutes cause for dismissal or conversion. Specifically, section 1112(b)(4)(A) provides that a showing of "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" may constitute such cause. 11 U.S.C. § 1112(b)(4)(A). The losses to the estate need not be large—"[a]ll that need be found is that the estate is suffering some diminution in value." *In re Taub*, 427 B.R. 208, 231 (Bankr. E.D.N.Y. 2010) (*quoting In re Kanterman*, 88 B.R. 26, 29 (Bankr. S.D.N.Y. 1988)). Critically, courts have held that post-petition negative cash flow and an inability to pay current expenses evidence the continuing losses required under section 1112(b)(4)(A). *See In re AdBrite*, *supra*, 290 B.R. at 215.

At the hearing on the Motion to Convert, the Town focused its fact-laden argument on an undisputed record of substantial and continuing loss to the estate and the lack of a reasonable prospect of rehabilitation as a basis for conversion, arguing that there is sufficient and indisputable evidence already in the record for this Court to find that cause exists to convert or dismiss based on the Debtor's admissions made during the course of these proceedings, the Debtor's MORs, and matters of judicial notice. The Court agrees.

The record in this case unequivocally shows that the Debtor's estate has suffered a continuing loss and diminution during the eight months this case has been pending. At the time of filing, the Debtor's Schedules evidenced monthly post-petition losses of roughly $2,530.00. The Debtor's monthly income of $1,000.00 is insufficient to meet post-petition expenses, which

continue to accrue. Notwithstanding the fact that rent, mortgage, tax, and administrative expenses on the Properties are not being paid, the Debtor's MORs indicate an end-of-the-month bank balance of less than $100.00 for the past three months. This is an insolvent, illiquid estate that will only continue to become more insolvent as time goes on. There is simply no indication that the Debtor is able to secure reliable, credible funding and there are no ostensible resources in the Chapter 11 estate to support the administration of this case. Accordingly, the Court finds that the first prong of Section 1112(b)(4)(A) has been met.

Next, because Section 1112(b)(4)(A) is written in the conjunctive, it therefore requires the movant to establish both a substantial or continuing loss to or diminution of the estate *and* the absence of a reasonable likelihood of rehabilitation. Rehabilitation in this context is not synonymous with reorganization, but rather, "[r]ehabilitation of a debtor's estate implies the re-establishment of a sound financial basis, a concept which necessarily involves establishing a cash flow from which current obligations can be met." *In re Kanterman*, *supra,* 88 B.R. at 29. "Without a reasonable amount of assets and a feasibly operating business there is no logic in continuing a Chapter 11 [case]." *In re 312 W. 91st Street Co.*, 35 B.R. 346, 347 (Bankr. S.D.N.Y. 1983).

Here, for starters, the Court notes that there is no operating business, no cash flow, no revenues, and no incremental or meaningful progress toward the filing of a feasible and confirmable plan. The Debtor has simply failed to demonstrate that he has any tangible capitalization, enforceable financing, or cash flow that can support his current obligations or plan objectives. *See In re Kanterman, supra*, 88 B.R. at 28–29 (finding no likelihood of rehabilitation when the debtor lacked independent income and was not meeting any post-petition obligations, including tax obligations). Chapter 11 cases do not reorganize on hope, interminable litigation,

delays, or an absence of financial resources. It is an unrealistic hope that the Debtor can now, amidst post-Covid-19 uncertainties, economic turmoil, and after many years of failed attempts, secure the financing needed to re-establish a secure and sound financial basis by which he can fund an ongoing Chapter 11 plan. "The debtor's 'boundless confidence' that reorganization will be successful is not a sufficient basis on which to conclude that rehabilitation is possible." *In re Taub*, *supra*, 427 B.R. at 231 (*citing In re Tiana Queen Motel, Inc.*, 749 F.2d 146, 151 (2d Cir. 1984)).

At his first appearance before this Court on October 4, 2019, the Debtor claimed that he had mortgage companies interested in refinancing the Properties; he had a "letter of intent" from a lender with a preliminary commitment for $4.8 million; and he hoped to close the refinancing within sixty days.[16] Since then, this Court has consistently heard the Debtor's claims of interested lenders providing "letters of intent" to fund his projects; and when no such financing comes to fruition, he reverts to elaborate excuses in order to explain why the financing fell through. The Debtor's most recent iteration of this tactic relies upon an uncertified letter from HOC Holdings, LLC, (ECF No. 217), that demonstrably does not rise to the level of a letter of understanding of lending, and which, significantly, is predicated upon the Debtor's ability to assume the fatally terminated Lease. While HOC's letter was only one of four proposals the Debtor expected to have "within the next week," as this Court noted in a previous ruling, the Debtor's pleas and insistence that the Court just wait and see what materializes from his heretofore failed fundraising has proven to be unavailing and unconvincing.

Here, the Debtor's MORs reflect continuing losses to the Chapter 11 estate and an inability to pay current obligations, while the Debtor's sustained inability to secure financing and establish a

---

[16] ECF No. 26, T/r 10/4 25:39–25:46; 28:16–28:26; 29:06–29:11.

positive cash flow clearly demonstrate that there is no likelihood of rehabilitation. Further, the requisite factual predicates for these conclusions upon which this Court relies have been established by the Debtor's own words and confirmed in his filings. No further proceedings or evidentiary hearings are required or necessary here. Although the Debtor purports to have a myriad of zoning and entitlement rights regarding the Properties (which the Town would contest), the Debtor's own admissions, the Court's prior findings, and matters of record in this case and in the state court foreclosure actions establish that none of the foregoing causes articulated herein would be further clarified or diminished through an additional evidentiary hearing. The Court, therefore, finds that indisputable cause exists within the meaning of section 1112(b)(4)(A) and that no further hearing is necessary.[17]

As to whether conversion of a case under Chapter 7 or dismissal is in the best interests of the creditors and the estate, the courts consider a number of factors, including: (1) the ability of the trustee in a Chapter 7 case to reach assets for the benefit of creditors; and (2) whether the Debtor would simply file a further case upon dismissal.[18] Here, citing to the Debtor's delay tactics in the prior foreclosure actions, the Town argues that a dismissal of this case will lead to further delays and attempts to frustrate creditors from foreclosing on the Properties, which will ultimately result in yet a further reduction of any recoverable amounts for creditors and cause an increase in legal costs for the creditors that seek to exercise their rights against the Debtor. Rather, the Town contends that conversion is in the best interests of the creditors and the estate based on the ability

---

[17] *See In re Sillerman*, 605 B.R. 631, 638 (Bankr. S.D.N.Y. 2019) (finding that where the record evidence, the undisputed facts, the case docket and the admissions by the Debtor provided clear and convincing evidence to support a finding of cause, there is no need for an evidentiary hearing); *In re Sunflower Racing, Inc.*, 226 B.R. 665, 672 (D. Kan. 1998) ("A full evidentiary hearing on a conversion or dismissal motion simply is unnecessary when an adequate factual record already is before the bankruptcy court."); *see also Matter of Sullivan Cent. Plaza I, Ltd.*, 935 F.2d 723, 727 (5th Cir. 1991) ("Where a matter has already been adequately argued before the bankruptcy judge, and the judge determines that no further hearings are necessary, then the debtor's due process rights are not violated when the judge decides the issue without further hearings.").
[18] 7 COLLIER ON BANKRUPTCY ¶ 1112.04[7] (16TH 2020).

of a Chapter 7 trustee to liquidate the Debtor's non-exempt, illiquid assets for distribution to his secured and unsecured creditors.[19]

   With the Debtor's limited income and minimal assets, the creditors' best hope for recovery, if any, is through a conversion to a Chapter 7 case. Lacking the ability to secure financing over many years now, the Debtor is unable to address his obligations without surrendering the Properties. A Chapter 7 trustee will be able to properly value and liquidate the Debtor's non-exempt assets, as well as be able to examine the various disputed claims the Debtor has asserted against his creditors in this case. Further, if this case were to be dismissed, given the history of this case and the foreclosure actions, it is highly likely that the Debtor will simply file a new bankruptcy at a later date, or employ other dilatory tactics to frustrate his creditors' ability to recover on their claims. The Court agrees that conversion of this case to a case under Chapter 7, rather than dismissal, is in the best interests of the creditors and this estate. Accordingly, this case will be converted to a case under Chapter 7 of the Bankruptcy Code.

   V.      CONCLUSION

   Since the inception of this case, the Debtor has made no significant credible or tangible progress towards proposing and confirming a plan to address his creditors' claims or pay the estate's administrative expenses. His real estate objectives are high-minded, but face formidable realities and an absence of financial resources or credibility. The Debtor has had eight months to file a plan and secure financing (and years before that), and while he has advanced, on multiple occasions, that various lenders have "expressed interest" in financing his projects—albeit with

---

[19] It is also noteworthy that, at the hearing on the Motion to Convert, the UST stated that the Debtor's outstanding claims of stay violations, the credibility of which have yet to be determined, warrant conversion, rather than dismissal, and that such claims can be addressed by a Chapter 7 trustee.

very particular and peculiar circumstances under which such funding might be made[20]—the Debtor has yet to produce any credible evidence of an unconditional, reliable commitment stating as much. Any capital that might be available to creditors or to fund this case has continued to decrease while the administrative claims continue to build up; post-petition mortgage arrears are accumulating; taxes remain unpaid; the Debtor lost a significant asset in the terminated lease; the Debtor continues to engage in dilatory, interminable and financially unsupported litigation with the Town; and the Town's tax debt has been accruing interest at a rate of 18% per annum. Simply put, the estate's financial profile is moribund, the Debtor's case strategy is fatally deficient and accordingly, the Court finds that there is no reasonable prospect of rehabilitation or reorganization.

Based on the foregoing, the Court finds that cause exists to convert the Debtor's case to a case under Chapter 7 of the Bankruptcy Code under § 11 U.S.C. 1112(b)(4)(A), and that conversion, rather than dismissal, is in the best interest of the creditors and the estate. Accordingly, the Town's Motion to Convert is GRANTED. Further, based on the Debtor's statements on the record, the Court finds that he has been fully, sufficiently and frequently heard, and had ample opportunities to sufficiently brief the issues and respond to pending motions. The Debtor's Motion to Extend Time to File Responsive Pleading is therefore DENIED. On the basis of an already established record and the admissions of the Debtor, the Court DENIES any Request for Evidentiary Hearing and the Application for Subpoenas as wasteful, duplicative, and dilatory. The Debtor has neither argued nor made a proffer of any facts which might even

---

[20] At the April 9th hearing, the Debtor's latest claim was that he would have four separate proposals expected "within the next week," all of which, however, are predicated upon this Court reversing its prior ruling and determination that the Debtor's lease with A&F terminated prepetition, "because no one is going to give [him] a DIP loan if this property is not an assemblage." (T/r 4/9 1:03:40-1:03:53). That admission is determinative of the failed trajectory of this case.

colorably affect the outcome of this Motion or are relevant to the underlying merits of the

Motion.

IT IS SO ORDERED at Hartford, Connecticut this 28th day of May 2020.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut