**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| In re: ) | Case No. 19-21619 (JJT) |
| ) | |
| JOHN ALAN SAKON, ) | Chapter 7 |
|     Debtor. ) | |
| ) | RE: ECF No. 931 |

**MEMORANDUM OF DECISION AND ORDER ON**
**DEBTOR'S MOTION FOR STAY PENDING APPEAL**

**I.    INTRODUCTION**

Before the Court is a Motion for Stay (ECF No. 931, the "Motion") filed by the *pro se* Debtor, John Alan Sakon. The Court previously entered a decision (ECF No. 916, the "Sale Procedures Decision") and order (ECF No. 923, the "Sale Procedures Order") approving sale procedures for an auction of commercial real property belonging to the Debtor's Chapter 7 bankruptcy estate. The auction is scheduled to occur on August 2, 2023. Debtor has appealed the Court's Sale Procedures Decision and Order to the United States District Court for the District of Connecticut ("District Court").[1] He now seeks a stay of the auction pending his appeal and further requests that the stay apply to all work being performed by Avison Young, the real estate broker, and Bederson LLP, the accountant, retained by Bonnie Mangan, the Chapter 7 Trustee ("Trustee"), in preparation for the auction.

Upon the filing of the Debtor's Motion, the Court entered an order directing the parties to file responsive briefs within five (5) days and noted that the Court would address the matter, without a hearing, on the papers filed by the parties (ECF No. 932).

Main St Group LLC ("Main St"), the Town of Glastonbury (the "Town" and together with Main St, the "Creditors"), and the Trustee (together with the Creditors, the "Objecting Parties") have jointly

---

[1] In addition to the Sale Procedures Order and Decision, the Debtor also appealed this Court's Memorandum of Decision on Debtor's Motions for Reconsideration (ECF No. 922), which pertained to several of the Court's decisions denying various motions the Debtor had filed around the time the Court was deliberating on the Debtor's Motion to Convert (ECF No. 694) and the Trustee's Motion to Sell Real Property (ECF No. 773). The District Court has consolidated the Debtor's appeal of the Sale Procedures Decision (and other related decisions) with his appeal of the Court's Order Granting Relief from the Automatic Stay (ECF No. 682). The District Court consolidated both appeals into case number 3:23-cv-250 (OAW).

objected to the Debtor's Motion (ECF No. 935). The Objecting Parties argue that the Court should deny the Debtor's Motion because he has failed to meet the required elements for obtaining a stay pending his appeal and has failed to explain why he should be relieved of the requirement to post a supersedeas bond to secure a stay.

For the reasons that follow, the Debtor's Motion for Stay is DENIED.

## II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant proceedings under 28 U.S.C. § 1334(b), and the Bankruptcy Court derives its authority to hear and determine this matter on reference from the District Court under 28 U.S.C. § 157(a) and (b)(1) and the General Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N).

## III. RELEVANT BACKGROUD

The Court assumes the parties' familiarity with the lengthy and contentious background of this case and refers the reader to the Court's Sale Procedures Decision that discusses this context. The Court adds the following background relevant to the Debtor's recent appeals filed with the District Court.

Prior to bankruptcy, the Debtor was engaged in years of litigation with the Town and first mortgagee (Main St's predecessor in interest). On September 19, 2019, just days before a foreclosure sale of the Debtor's properties ("Properties") scheduled pursuant to a judgment of the Connecticut Superior Court, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On May 28, 2020, upon the motion of the Town under 11 U.S.C. § 112(b), the Court converted the Debtor's case to one under Chapter 7 of the Bankruptcy Code and appointed the Chapter 7 Trustee (ECF No. 250, the "Conversion Order"). The Debtor appealed the Conversion Order to the District Court and sought a stay pending that appeal. This Court denied the stay (ECF No. 377). The Conversion Order was affirmed on appeal by the District Court on January 19, 2021 (ECF No. 422).

Commencing in the fall of 2020, the Trustee repeatedly requested that the Debtor file his outstanding tax returns in order to evaluate a potential sale of the Properties. When the Debtor failed to

comply, the Trustee moved to compel him to do so. The Court entered numerous orders over the course of a year, including two civil contempt orders with the threat of incarceration, before the Debtor finally filed his tax returns in January 2023. *See, e.g.*, ECF Nos. 613 & 655. On February 15, 2023, for cause shown, this Court granted the Creditors' joint motion for relief from the stay to allow them to complete their pre-bankruptcy foreclosure actions (ECF No. 682, the "Stay Relief Order"). The Debtor has appealed the Stay Relief Order, but has not sought a stay for that appeal.

    A.  The Current Appeal

The Debtor's current appeal arises from the Court's approval of the Chapter 7 Trustee's proposed sale procedures in connection with the anticipated auction of the Properties and the Court's denial of the Debtor's motion to reconvert this case back to Chapter 11. On March 7, 2023, the Debtor filed a motion seeking to convert his Chapter 7 case back to Chapter 11 (ECF No. 694, the "Reconversion Motion"). The Trustee objected to the Reconversion Motion (ECF No. 761), as did the Creditors (ECF No. 697) and the United States Trustee (ECF No. 853).

On April 12, 2023, the Trustee filed a motion seeking approval of sale procedures for the contemplated auction (ECF No. 773, the "Sale Motion"), pursuant to which the Trustee sought approval of a Stalking Horse Bid (as defined therein) for the Properties, as well as approval to establish bidding procedures to determine a topping bid. The Sale Motion further contemplates the release (the "Release") of certain alleged claims against Main St and its affiliates (the "Main St Claims") arising out of a certain Confidentiality Agreement between the Debtor and Carp Realty, LLC (the "Confidentiality Agreement"). In conjunction with the Sale Motion, the Trustee also filed applications to employ a real estate broker and an accountant (ECF Nos. 791, 897).

On May 25, 2023, the Court held a remote hearing for several hours on the Sale Motion. After entertaining initial argument, the Court continued the hearing to June 1, 2023. The Court heard more than three hours of additional arguments on June 1st. At the conclusion of the hearing, the Court set a continued hearing date of Wednesday, June 7, 2023 (ECF No. 862). At the conclusion of the June 1 hearing, the Court stated with regard to the continued hearing dates: "I propose **Wednesday** in the

3

afternoon and Thursday all day" and in discussing a scheduling conflict with counsel for Main St for Thursday, the Court reiterated "let's see how far we can get on **Wednesday**." ECF No. 861, 3:07-3:08 (emphasis added). Further, on June 2, 2023, the Court entered an order as follows: "A continued hearing on the Debtor's Motion to Convert Chapter 7 Case to Chapter 11 (ECF No. 694) is currently scheduled for **June 7, 2023** and June 8, 2023."

Despite ample notice, the Debtor failed to appear at the June 7 hearing. Based both on the Debtor's failure to appear, as well as the significant argument and briefing already submitted to the Court and the record developed in the case to date, the Court issued the Sale Procedures Decision, approved the Sale Procedures Order, denied the Reconversion Motion (ECF No. 914, the "Reconversion Order"), and denied the Abandonment Motion (ECF No. 913, the "Abandonment Order"). On June 13 and 14, 2023, the Debtor filed two Motions for Reconsideration (ECF Nos. 911, 912), seeking reconsideration of the Sale Procedures Decision and Order and the Abandonment Order, which the Court denied (ECF No. 922, the "Reconsideration Order"). Once again, the Debtor seeks to prevent the sale process from advancing with this Motion.

## IV. DISCUSSION

### A. Legal Standard for Obtaining a Stay Pending Appeal

Federal Rule of Bankruptcy Procedure 8007 governs motions for a stay pending appeal. The rule provides, in pertinent part, that "[o]rdinarily, a party must move first in the bankruptcy court for . . . a stay of a judgment, order, or decree of the bankruptcy court pending appeal . . . ." Fed. R. Civ. P. 8007(a)(1)(A). The United States Court of Appeals for the Second Circuit has established the following four-part test for determining whether to grant a motion for stay pending appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007).

"[T]he degree to which a factor must be present varies with the strength of the other factors, meaning that more of one [factor] excuses less of the other." *Id.* (citation omitted; internal quotation marks omitted.) "The party seeking the stay bears the burden of showing entitlement to the stay." *In re Vincent Andrews Mgmt. Corp.*, 414 B.R. 1, 4 (D. Conn. 2009). And that burden is a "heavy" one. *See In re David X. Manners Co.*, No. 15-51490 (JJT), 2018 WL 2325758 at *1 (Bankr. D. Conn. 2018) (citing *Barretta v. Wells Fargo Bank, N.A. (In re Barretta)*, 560 B.R. 630, 632 (D. Conn. 2016)); *In re Adelphia Commc'ns Corp.*, 333 B.R. 649, 659 (S.D.N.Y. 2005).

Here, none of the relevant factors weigh in favor of granting a stay pending appeal. As further explained below, the Debtor has failed to articulate any sound arguments for granting a stay.

**1. The Debtor will not succeed on the merits.**

"The single most important factor is likelihood of success on the merits." *In re MDM Golf of Gillette Ridge, LLC*, No. 3:15-cv-00027 (JBA) 2015 WL 12804567 at *4 (D. Conn. May 8, 2015). The Debtor has failed to show that there is any likelihood he will succeed on the merits of his appeal.

The Debtor's appeal implicates both the Court's approval of the sale procedures for the auction, as well as the Court's approval of the Release of the Main St Claims. It is well-established that a bankruptcy court can approve the disposition of property of the estate outside the ordinary course of business under 11 U.S.C. § 363(b) if there is evidence presented to the court that there is a good business reason to do so. *See In re Iridium Operating LLC*, 478 F.3d 452, 466 (2d Cir. 2007) ("In this Circuit, the sale of an asset of the estate under § 363(b) is permissible if the 'judge determining [the] § 363(b) application expressly find[s] from the evidence presented before [him or her] at the hearing [that there is] a good business reason to grant such an application.'"). A bankruptcy court's decision to approve a compromise under Fed. R. Bankr. P. 9019 is evaluated under an abuse of discretion standard. *See In re Iridium Operating LLC*, 478 F.3d at 461 n.13. A bankruptcy court abuses its discretion and will be reversed only if its decision: "(1) is based on clearly erroneous or insufficient factual findings[;] (2) rests on an erroneous view of the law; or (3) falls outside the range of permissible decisions." *In re Friedberg*,

No. 3:12-cv-00940 JCH, 2013 WL 869937, at *2 (D. Conn. Mar. 5, 2013) (quoting *In re Milford Conn. Assocs., L.P.,* 404 B.R. 699, 706 (D. Conn. 2009)).

In its Sale Procedures Decision, the Court identified substantial evidence and reasons to support the Trustee's sound business justification for entering into the Stalking Horse Bid with Main St, and to approve the sale procedures, including the compromise of the Main St Claims. In particular, the Court found: (i) the Properties are currently derelict and without any permits to build as of right; (ii) the real estate tax and mortgage costs continue to accrue since well before this bankruptcy case at a rate of approximately $41,000 per month; (iii) in the years before the case was filed and before it was converted to Chapter 7, the Debtor was unable to sell the Properties, secure a joint venture, or obtain financing; (iv) the Stalking Horse Bid and Release of the Main St Claims will offer a tangible economic benefit to the Chapter 7 estate and general unsecured creditors, while allowing for the possibility of a topping bid; and (v) the Main St Claims are highly uncertain and unlikely to lead to any meaningful recovery to the estate. ECF No. 916 at 14–27.

The Debtor asserts that he has a significant likelihood of success on appeal because the Trustee failed to assume an executory contract under 11 U.S.C. § 365. Earlier in this case, the Debtor scheduled a breach of contract claim arising from the Confidentiality Agreement as an asset of the Chapter 7 estate. The Confidentiality Agreement is dated October 13, 2015 related to a refinancing, purchase and/or joint venture agreement for The Shoppes at Avalon in Farmington, Connecticut. *See* ECF No. 690 at 7. The Confidentiality Agreement is between the Debtor and Domenic Carpionato, the owner of CARP Realty, LLC and the Carpionato Real Estate Group. Under the terms of the Confidentiality Agreement, the Debtor asserts that he agreed to furnish confidential information to Domenic Carpionato and John Cafasso, a real estate broker, in exchange for Domenic Carpionato's agreement to refrain from doing business with the Debtor's lenders at the time. *See* Sale Procedures Decision at 16.

The Debtor argues that the Trustee failed to assume the Confidentiality Agreement under 11 U.S.C. § 365, and further argues that the sale must fail because it is conditioned on the waiver of liability for breach of the Confidentiality Agreement under the terms of the Release. The Debtor previously made

this argument in his Motions for Reconsideration, which the Court rejected. *See* Reconsideration Order at 6, ECF No. 922 ("the Court is unsatisfied that the Agreement constitutes an executory contract that can be assumed or rejected by the Trustee under 11 U.S.C. § 365, rendering the Debtor's substantive arguments meaningless"). Further, the Debtor has confused the standard for assuming an executory contract with the standard for the Trustee to assess and monetize viable legal causes of action belonging to the bankruptcy estate. The determination of whether the Confidentiality Agreement is an executory contract does not impact the Court's rulings that the Debtor has appealed.

Similarly, the Objecting Parties correctly point out that the determination of whether the Confidentiality Agreement is executory does not affect the Trustee's ability to release the Main St Claims. The Confidentiality Agreement itself, and the claims arising from it, are two distinct assets of the Chapter 7 bankruptcy estate. Rejection of an executory contract "does not affect the parties' substantive rights under the contract such as the amount owing or a measure of damages for breach." *In re Annabel*, 263 B.R. 19, 25–26 (Bankr. N.D.N.Y. 2001); *In re Chestnut Ridge Plaza Associates, L.P.*, 156 B.R. 477, 483 (Bankr. W.D. Penn. 1993); *see also In re Lavigne*, 114 F.3d 379, 387 (2d Cir. 1997) ("[R]ejection merely frees the estate from the obligation to perform; it does not make the contract disappear"). The Debtor's scheduled Main St Claims are unaffected by a supposed rejection of the Confidentiality Agreement. In addition, the Court has already held that the Debtor's argument "mistakenly focus[es] on the [Confidentiality] Agreement and the assumption or rejection thereof, which is the incorrect mode of analysis and ultimately irrelevant to the Court's disposition of the present Motions." ECF No. 922 at 5.

In addition, no sale has taken place yet and therefore the Court has not approved a sale of the Properties. The Debtor's entire Motion is premised on an irrelevant and legally incorrect argument that the Court has previously rejected. He has failed to identify any erroneous or insufficient factual findings and has failed to allege that the Court's orders rest on an erroneous view of the law. Because the Debtor has failed to provide factual or legal argument on the remaining elements for obtaining a stay, the Court will only briefly survey those elements.

### 2. The Debtor will not suffer irreparable harm.

Bankruptcy courts have held that the sale of a commercial property does not create irreparable harm.

> A party seeking a stay pending appeal must show a probable irreparable harm that is neither remote nor speculative, but actual and imminent. . . . Further, injuries that are fully remedied by monetary damages do not constitute irreparable harm. Absent special circumstances, the sale of commercial property does not create an irreparable harm, since any harm due to the sale of the property or interference with the business can be remedied with monetary damages.

*In re Am. Land Acquisition Corp.*, No. 12-76440 (AST), 2013 WL 2481534, at *7 (Bankr. E.D.N.Y. June 10, 2013) (internal quotations and citations omitted); *see also In re MDM Golf*, 2015 WL 12804567 at *6 (holding that if the court has determined that the Debtor is unlikely to succeed on the merits, then the "Debtor's loss of its property is inevitable and is not an irreparable harm that would be *caused by* the denial of a stay." (emphasis in original)). The Debtor has failed to articulate an argument in support of this element and has thus failed to satisfy his burden in this regard.

The Objecting Parties argue that the Debtor cannot possibly be harmed if the auction proceeds. The Court agrees. The Debtor is not generating any income from the Properties. Taxes and secured debt continue to accrue unpaid at the rate of approximately $41,000 per month,[2] and the Debtor has not paid real estate taxes to the Town in more than a decade. The total secured debt on the Properties already exceeds $7.6 million before considering any sale expenses or the prospect of a residual benefit for the estate. In its Sale Procedures Decision, the Court emphasized that it was critical for the sale of the Properties to proceed in an expeditious manner, lest the opportunity to maximize a current outcome be lost. The Debtor will not be prejudiced if the auction proceeds and a sale is approved.

---

[2] *See* ECF No. 916 at 20 ("The Trustee, Main St., and the Town have represented during hearings that the cost of delaying the Sale continues to run at approximately $41,000 per month based on the accrual of real property taxes and monthly maintenance costs on the Properties. No party objected to or challenged this representation.").

### 3. Issuance of the stay will substantially harm the bankruptcy estate and its creditors.

"As the party seeking a stay pending appeal, Debtor bears the burden of proving that the estate will not suffer substantial injury if a stay is granted." *In re Am. Land Acquisition Corp.*, 2013 WL 2481534 at *8. Here, the Chapter 7 bankruptcy estate and its creditors, including Main St and the Town, will be substantially harmed by a stay. Neither the Debtor nor the Chapter 7 estate have the ability to pay for the approximately $41,000 in costs that continue to accrue on the Properties each month. The accrual of taxes and costs on the Properties continue to erode any prospective recovery of the prepetition unsecured creditors. Irrefutably, the parties have contributed extensive efforts to put together a sale and that sale process is sufficiently underway.[3] The auction is scheduled to occur in less than two weeks. The Debtor has failed to articulate any cognizable reasons to disrupt this process. In keeping with the Debtor's past dilatory behavior in this case, it appears the Debtor's principal goal is to hamstring the Trustee and Main St for an indeterminate time by using the appeal process to ensure that the sale proposed by the Trustee never takes place.

### 4. The public interest favors denial of the stay.

The public interest likewise favors proceeding with a sale.

> As the party seeking a stay pending appeal, Debtor bears the burden of demonstrating a legitimate and compelling public interest in support of a stay. In considering a request for a stay pending appeal, courts consider a variety of public interest concerns, including "the expeditious administration of bankruptcy cases [which] is impaired by obstructing the trustee's efforts to collect, liquidate and distribute assets to creditors of the estate."

*In re Am. Land Acquisition Corp.*, 2013 WL 2481534 at *10. The Debtor has failed to articulate why the public interest favors a stay in this case. To the contrary, the Debtor has demonstrated time and again that he is not interested in the administration of justice or the advancement of this case unless it serves his personal needs. His refusal to file his tax returns and his unrelenting campaign to obstruct the Trustee's

---

[3] At each turn, the Debtor has resisted these efforts and failed to cooperate in a meaningful or timely fashion.

efforts to sell the Properties have dramatically and unnecessarily increased attorney's fees and costs in this case. The Court has already rejected the conceptual deal proposed by Lyman Development Corp., the Debtor's preferred buyer for the Properties. Sale Procedures Decision at 20–21. Clearly, the Debtor favors a sale that is unlikely to yield any dividend or mitigate transaction costs, and that has a substantially delayed timeframe and uncertainty as to the closing date. Thus, granting a stay would be contrary to the public interest.

     5. **Any issuance of a stay would be conditioned on the Debtor posting a bond, which the Debtor is unable to do.**

While posting an appeal bond is not mandatory, "if the movant seeks imposition of a stay without a bond, the applicant has the burden of demonstrating why a court should deviate from the ordinary full security requirement." *In re Motors Liquidation Co.*, 539 B.R. 676, 686 (Bankr. S.D.N.Y. 2015) (internal quotations omitted). "[I]f a stay pending appeal is likely to cause harm by diminishing the value of an estate or 'endanger [the non-moving parties'] interest in the ultimate recovery,' and there is no good reason not to require the posting of a bond, then the court should set a bond at or near the full amount of the potential harm to the non-moving parties." *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 350, 368 (S.D.N.Y. 2007), *dismissing appeal, vacating stay in In re Adelphia Commc'ns Corp.,* No. 07-0279-BK, 2007 WL 7706743 at *2 (2d Cir. Feb. 9, 2007).

If the Court were to enter a stay in this case, it would be entirely appropriate to condition any stay on the Debtor posting a bond sufficient to cover the value of Main St's Stalking Horse Bid to the Chapter 7 estate, as well as the ongoing interest, fees, and other transaction costs that will accrue during the period the stay is in place. In its Sale Procedures Decision, the Court estimated the aggregate value of the Stalking Horse Bid to the Chapter 7 estate in the amount of $7.9 to 8 million. ECF No. 916 at 15. Thus, even if the Debtor could show that he is entitled to a stay pending his appeal, the stay would be conditioned on a bond in the amount of at least $8 million, plus the $41,000 in costs that accrue each month the stay would remain in place. The Debtor has not put forward argument or evidence as to why this Court should deviate from requiring a bond. The Debtor's chronic unemployed status and striking

lack of financial resources confirm that he is unable to afford a bond. Although the Debtor has already failed to meet his burden for seeking a stay pending appeal, these circumstances present further grounds to deny the Debtor's Motion.

V.   **CONCLUSION**

The Debtor has failed to meet his heavy burden on the facts or law in showing that he is entitled to a stay pending his appeal. The Objecting Parties have presented clear, cogent and convincing reasons for denying a stay in this case. None of the Second Circuit's four factors weigh in favor of a stay pending appeal. Further, even if the Debtor had satisfied his burden for imposition of a stay, he is incapable of posting the bond that would be required in that event. This Motion is frivolous, utterly without merit, and yet again calculated to only effect delay in the administration of this case and impose additional costs and expenses on the parties. Accordingly, the Debtor's Motion for Stay is denied.

Dated at Hartford, Connecticut this 21st day of July 2023.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut