## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## HARTFORD DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| John Alan Sakon, | Case No. 19-21619 (JJT) |
| Debtor. | Re: ECF No. 1075 |

### MEMORANDUM OF DECISION ON ORDER TO SHOW CAUSE

Before the Court is its Order to Show Cause (ECF No. 1075), in which the Court ordered the Debtor to appear and show cause as to why he continues to pursue claims against Main St Group LLC, despite a release in conjunction with the Court-approved sale[1] and prior warnings of this Court. The Court entered this Order to Show Cause upon motion from Main St (ECF No. 1072), which argued that the Debtor was violating this Court's orders and a release against Main St and its affiliates, along with the automatic stay, through his filing of a Motion to Reopen and a proposed Amended Complaint in the District Court.[2]

The Debtor responded (ECF No. 1074) to Main St's motion, stating that this Court has no jurisdiction regarding a certain Confidentiality Agreement and a certain anti-assignment clause in a Settlement Agreement on the basis that the Chapter 7 Trustee's failure to assume these contracts means that they have passed

---

[1] The Court takes judicial notice of its sale order (ECF No. 952) and all associated filings. The Court notes that none of its orders in this case have been stayed pending appeal.

[2] The Court takes judicial notice of the docket of District Court action, *Sakon v. Town of Glastonbury*, Case No. 23-cv-00053 (AWT) (D. Conn.).

from the estate to him.[3] Attached to his response was his Appellant's Objection to Joint Motion to Dismiss Appeal, which has been filed in the consolidated appeals he has taken from this Court to the District Court.[4]

The Court held a hearing on the Order to Show Cause on August 15, 2024, at which appeared the Debtor, the Chapter 7 Trustee, her counsel, counsel for Main St, and counsel for the United States Trustee. After hearing arguments from the parties and an extended dialogue on the substantive law with the parties, the Court took the matter under advisement.[5] For the reasons that follow, the Court finds that the Debtor has violated this Court's orders and the automatic stay.

Before discussing the various applicable legal principles, the Court first discusses the parameters of the release.[6] Under the release, the Chapter 7 Trustee "release[d] and forever discharge[d] Main St and any individuals and entities affiliated with Main St . . . from any and all claims arising from the Real Property, the Note, the Mortgage, the Main St Foreclosure Action and the sale, including but not limited to all claims scheduled by the Debtor" in ECF Nos. 689 and 690. This release was made "[f]or and in consideration of the substantial value and benefit provided by Main St . . . to the Bankruptcy Estate through the Stalking Horse

---

[3] The Debtor has made similar arguments in attempting to have the Superior Court vacate an order granting a motion to substitute party and to strike Main St's appearance, both in the foreclosure action, *Cyhani Ventures, Inc. v. Sakon*, Case No. HHD-CV-14-6056422-S (Conn. Super. Ct.). The Court takes judicial notice of the docket of the foreclosure action.

[4] The Court takes judicial notice of the docket of the appeal, *In re Sakon*, Case No. 23-cv-00250-OAW (D. Conn.).

[5] Per the record of the hearing, the Court directed the Debtor to file part of his prepared remarks as a supplemental statement (ECF No. 1080), which the Debtor has done (ECF No. 1082). The Court has reviewed the supplemental statement, which contains no new arguments and otherwise misconceives the law, in the context of this decision.

[6] A copy of the release was docketed at ECF No. 1073.

Purchase Agreement[.]" The release was provided for in the sale motion (ECF No.

773), approved in the Sale Procedures Order (ECF No. 923), and further approved

in the granting of the sale order itself.[7]

    1.    **The Confidentiality Agreement and the Settlement Agreement have not been abandoned to the Debtor.**

The Debtor argues that, under 11 U.S.C. § 365(d)(1), certain executory

contracts—a Confidentiality Agreement and a Settlement Agreement—have been

abandoned to him. This argument conflates abandonment with rejection. Moreover,

his argument fails to understand that neither is an executory contract.

    1.1    **The Settlement Agreement and Confidentiality Agreement are not executory contracts.**

Under § 365(a) of the bankruptcy Code, with exceptions inapplicable here,

"the trustee, subject to the court's approval, may assume or reject any executory

contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). "Although § 365 does

not define the term 'executory contracts,' courts have long employed the definition

articulated by Professor Countryman, i.e., 'a contract under which the obligation of

both the bankrupt and the other party to the contract are so far unperformed that

the failure of either to complete performance would constitute a material breach

excusing the performance of the other.'" *In re Wireless Data, Inc.*, 547 F.3d 484, 488

n.1 (2d Cir. 2008) (quoting Vern Countryman, *Executory Contracts in Bankruptcy:*

*Part I*, 57 Minn. L. Rev. 439, 460 (1973)); *see also In re Penn Traffic Co.*, 524 F.3d

---

[7] The sale order as expressly stated at paragraph 22 that "[a]ll persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the [Chapter 7] Trustee to sell and transfer the Real Property to [Main St] in accordance with the terms of the Stalking Horse Purchase Agreement and this Order."

373, 379 (2d Cir. 2008). "The time for testing whether there are material unperformed obligations on both sides is when the bankruptcy petition is filed." *In re Weinstein Co. Holdings LLC*, 997 F.3d 497,504 (3d Cir. 2021). Neither the Confidentiality Agreement nor the Settlement Agreement meet this definition.

### 1.1.1   Confidentiality Agreement

Under the Countryman definition, "if a debtor fully performed before the commencement of the case, and only the other party's performance was left to be done, the contract should not be viewed as executory because the debtor's right to receive the other party's obligation would simply be an asset of the estate." 3 Collier on Bankruptcy ¶ 365.02[2][a].

In the Confidentiality Agreement, the Debtor agreed to provide "certain confidential information relating to the affairs of the Company" in exchange for the counterparties' agreement to keep that information confidential. The Debtor would have performed his part of the agreement prepetition by providing that information. The Confidentiality Agreement is therefore not an executory contract.

### 1.1.2   Settlement Agreement

"[W]here the counterparty performed but the debtor has not, the contract is . . . not executory because it is only a liability for the estate." *Weinstein Co.*, 997 F.3d at 504–05. Where the only obligation remaining is to make payments, that is not enough to make a contract executory. *See In re Chateaugay Corp.*, 102 B.R. 335, 347 (Bankr. S.D.N.Y. 1989); *see also* 3 Collier on Bankruptcy ¶ 365.02[2][a] (same under functional approach).

The Settlement Agreement was entered into between the Debtor and Cyhani Ventures, Inc. to settle the foreclosure action. Per the agreement, Cyhani withdrew the foreclosure action. After the Debtor failed to make the stipulated payment by September 1, 2016, Cyhani requested that the case be restored to the docket, where it remains. Because the only material obligation remaining was for the Debtor to make a payment, the Settlement Agreement was not executory.

Moreover, the anti-assignment provision of the Settlement Agreement does not make the contract executory. "In order to determine whether failure to perform the remaining obligations would constitute a material breach, we need to consider contract principles under the relevant nonbankruptcy law." *In re Columbia Gas Sys. Inc.*, 50 F.3d 233, 240 n.10 (3d Cir. 1995). In other words, the Court must "determine whether one of the parties' failure to perform its remaining obligations would give rise to a material breach excusing performance by the other party under the contract law applicable to the contract." *Id.* (cleaned up).

Under Connecticut law (which governs the Settlement Agreement), an anti-assignment provision in a contract does not render an assignment void unless there is express language stating as much. *Rumbin v. Utica Mut. Ins. Co.*, 254 Conn. 259, 267–78, 757 A.2d 526, 530–36 (2000). The Settlement Agreement contains no such language. In cases without such express terms, the nonbreaching party may sue for damages, including against the assignee, who stands in the assignor's shoes. *Id.* In short, it does not excuse performance. Either because the Settlement Agreement

5

only required payment by the Debtor or because the anti-assignment provision was not material, the Settlement Agreement is not an executory contract.[8]

       1.2    Rejection does not mean abandonment.

Even if the Confidentiality Agreement and Settlement Agreement were executory contracts, they have not been abandoned by the Chapter 7 Trustee to the Debtor. Under § 365(d)(1):

> In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.

Subsection (g) then provides that, with exceptions inapplicable here, "the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease[.]" 11 U.S.C. § 365(g); *In re SIMA Int'l, Inc.*, No. 17-21761 (JJT), 2018 WL 2293705, at *8 (Bankr. D. Conn. May 17, 2018). Abandonment, meanwhile, is governed by § 554, which allows a trustee to abandon property of the estate after notice and a hearing if it is "burdensome to the estate or . . . of inconsequential value and benefit to the estate." It also allows a party in interest to request that a court order the trustee to abandon property.[9] 11 U.S.C. § 554(b). Property scheduled under § 521(a)(1) that is not administered *at the time of case*

---

[8] The Debtor also fails to grapple with the fact that his failure to make payment by September 1, 2016, *was* a material breach, which is evidenced by the fact that Cyhani was permitted to restore the foreclosure action to the docket.

[9] The Debtor has filed multiple such requests. The Court takes judicial notice of the Trustee's notice of abandonment (ECF No. 345), the Court's various orders regarding abandonment (ECF Nos. 389, 426, 456, 913, and 922), and all associated filings.

*closure* results in abandonment to the debtor. *Id.* § 554(c). Other property remains the estate's. *Id.* at § 554(d).

The Chapter 7 Trustee has not expressly abandoned the Confidentiality Agreement or Settlement Agreement, nor has the Court ordered her to do so. This case has not closed. The Debtor instead argues that the Chapter 7 Trustee's failure to assume these contracts means that they have been abandoned to him.

The Court recognizes that the Second Circuit (and other courts) have stated that, at least in the context of residential leases, "[a] rejected lease is abandoned and no longer part of the estate." *In re Stoltz*, 315 F.3d 80, 85 n.1 (2d Cir. 2002);[10] 3 Collier on Bankruptcy ¶ 365.10[3][b] (16th ed. 2024) (collecting cases). Even then, "inaction constitutes a rejection of the lease, but the reversion to the debtor is not automatic." *In re Marcano*, 288 B.R. 324, 329 (Bankr. S.D.N.Y. 2003); *see also In re Munoz*, 610 B.R. at 915 ("unless a § 554(a) motion is filed and granted, rejection of a disclosed executory contract does not result in abandonment until the case is closed"). Further, "a trustee can abandon only an asset, not a liability such as the debtor's obligation to perform under the contract[.]" *Id.* (citing *In re Res. Tech. Corp.*, 430 F.3d 884, 887 (7th Cir. 2005)). Accordingly, assuming that the Confidentiality Agreement and Settlement Agreement were executory contracts,

---

[10] One court has traced this case law "to the Bankruptcy Act concept that rejected contracts never become estate property." *In re Munoz*, 610 B.R. 907, 915 (Bankr. D.N.M. 2019). Although the abandonment concept might make sense in the residential lease realm, where a debtor would continue to occupy a home after automatic rejection, nothing in the Code's language suggests that abandonment occurs for automatic rejection of executory contracts.

they have not been abandoned to the debtor through the Chapter 7 Trustee's not having assumed them within 60 days.[11]

***

Because the Confidentiality Agreement and Settlement Agreement were not executory contracts and, even if they were, they have not been abandoned to the Debtor, the Debtor has no cause of action based upon either. Further, because the release provided by the Chapter 7 Trustee covers Main St and its affiliates with regards to those agreements, any claims for breach of those agreements have been extinguished. The Debtor's pursuit of released claims (which have not even been abandoned to him) is therefore a violation of this Court's orders that approved the release and enjoined interference with the sale.

2.    The Debtor is violating the automatic stay by filing and prosecuting his claims.

Under § 362(a) of the Bankruptcy Code, with exceptions inapplicable here, a bankruptcy petition "operates as a stay, applicable to all entities, of . . . (3) any act . . . to exercise control over property of the estate[.]" 11 U.S.C. § 362(a). Property of the estate "includes causes of action belonging to the debtor at the time the case is commenced." 5 Collier on Bankruptcy ¶ 541.07. It is "well settled that the trustee is the proper or real party in interest to prosecute prepetition causes of action." *Hopkins v. Foothill Mountain, Inc. (In re Hopkins)*, 346 B.R. 294, 304 (Bankr.

---

[11] The Debtor also fails to understand that, even if certain contracts were rejected, they were breached. The effect of this breach means that, if anything, Main St's agreement to subordinate a large portion of its claims as part of the sale process was even more value enhancing to the bankruptcy estate.

8

E.D.N.Y. 2006) (collecting cases); *see also Bailey v. Household Fin. Corp. III (In re Bailey)*, 306 B.R. 391, 394 (Bankr. D.D.C. 2004) ("under the Bankruptcy Code, a debtor in a chapter 7 case under the Bankruptcy Code violates § 362(a)(3) when [he] continues prosecution of litigation initiated prepetition, or when [he] commences litigation postpetition of a prepetition claim, if the claim pursued is property of the estate").

With regards to the Confidentiality Agreement and the Settlement Agreement, the Court has already determined that neither is an executory contract and that, even if they were, neither has been abandoned to the Debtor. Besides being in violation of this Court's orders, the Debtor's attempts to sue Main St and its affiliates with regards to those agreements are also attempts to exercise control over property of the estate and therefore violate the automatic stay.[12]

As for his purported civil RICO allegations, the proposed Amended Complaint in the District Court alleges a course of conduct founded in both the prepetition and postpetition periods. No prepetition cause of action against Main St or its affiliates has been abandoned, so any such cause of action remained property of the estate and was extinguished by the release. The only colorable postpetition facts alleged against Main St and its affiliates pertain to the Confidentiality Agreement and Settlement Agreement.[13] The Debtor has no interest in those

---

[12] The same is true for the Debtor's attempts to undo portions of the foreclosure action.
[13] *See* pages 22–23 of the proposed Amended Complaint (alleging that assignment of note and mortgage violated the Settlement Agreement and the Confidentiality Agreement).

agreements, and any cause of action stemming from them, whether pre- or postpetition, has also been extinguished by the release.

Further, "a civil RICO cause of action accrues when a defendant commits an act that injures the plaintiff, not when the plaintiff has both suffered an injury and discovered the pattern of alleged RICO activity." *Prince v. Dicker*, 29 F. App'x 52, 55 (2d Cir. 2002) (citing *Rotella v. Wood*, 528 U.S. 549 (2000)). The applicable 4-year statute of limitations has surely expired on many of the alleged injuries from the prepetition period. But if any entity was injured by postpetition conduct, it was the Chapter 7 estate, which held all legal and equitable interest in the pertinent properties at the time of the alleged conduct. And, again, any cause of action arising out of Main St's and its affiliates' conduct has been released by the Chapter 7 Trustee. Thus, the Debtor is violating the automatic stay by attempting to exercise control over estate property.

When a party violates the automatic stay, courts must determine whether there is a fair ground of doubt whether the stay barred the party's conduct in determining whether that party may be held in civil contempt. *Windstream Holdings, Inc. v. Charter Commc'ns Operating, LLC (In re Windstream Holdings, Inc.)*, 105 F.4th 488, 494–95 (2d Cir. 2024) (citing *Taggart v. Lorenzen*, 587 U.S. 554 (2019)). The Court does not believe that there is a fair ground of doubt regarding whether the Debtor is violating the automatic stay (or this Court's orders) by filing and prosecuting actions against Main St and its affiliates that belong to the estate or have been released by the Chapter 7 Trustee. Nevertheless—and in line Main

St's request—the Court will refrain from issuing sanctions for contempt at this time. The Court will thus, once again, afford the Debtor a reasonable period of time to conform his behavior, but, given that it has now been made clear to the Debtor that there is no fair ground of doubt, the Court will sanction the Debtor if he fails to act in accordance with this decision. His misconceptions of the law, failure to read the orders of this Court, or his personal sense of unfairness do not justify defiance of the law, orders of this Court, or interference in the administration of the Chapter 7 estate.

3.    Conclusion

For the foregoing reasons, it is hereby ORDERED:

(1) The Debtor's proposed Amended Complaint in *Sakon v. Town of Glastonbury*, Case No. 23-cv-00053-AWT, ECF No. 83 (D. Conn. July 10, 2024), is adjudged void, and the Debtor is directed to withdraw it by September 6, 2024.

(2) The Debtor's Motion to Vacate Order and Motion to Strike Appearance in *Cyhani Ventures, Inc. v. Sakon*, Case No. HHD-CV-14-6056422-S, Docket Entries 212.00 and 213.00 (Conn. Super. Ct. July 14–15, 2024), are adjudged void, and the Debtor is directed to withdraw them by September 6, 2024.

(3) If the Debtor does not withdraw said proposed Amended Complaint, Motion to Vacate Order, and Motion to Strike Appearance by September

6, 2024, the Debtor shall be fined $250 per day until such have all been withdrawn, for a maximum of two weeks.

(4) If the Debtor does not withdraw said proposed Amended Complaint, Motion to Vacate Order, and Motion to Strike Appearance by September 13, 2024, an order to show cause shall issue, which will require the Debtor to appear in person and show cause as to why he should not be incarcerated until such have all been withdrawn, with such hearing to be held, if necessary, on September 26, 2024, at 2:30 p.m. prevailing Eastern time.

(5) The Debtor shall promptly certify his compliance with this order by filing upon the docket of this case, on the next business day thereafter, a Certificate of Compliance, stating the date of compliance and attaching copies of his withdrawal filings.

(6) The Court hereby affirms and reincorporates into this order the aforesaid release and related injunctions embodied in this Court's orders (ECF Nos. 923, 952), and admonishes the Debtor to abide by their terms unless and until vacated or stayed by a court of competent jurisdiction.

IT IS SO ORDERED at Hartford, Connecticut this 26th day of August 2024.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut